IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.

HILLCREST BANK FLORIDA,
a Florida banking corporation,

**50 2009 CA 0 0 1 8 4 6 XXXXMB**

    Plaintiff,

vs.

610 CLEMATIS RETAIL PROPERTIES,
LLC, a dissolved Florida limited liability
company; ILIA MOGILEVSKY,
individually;610 CLEMATIS CONDOMINIUM
ASSSOCIATION, INC., a Florida corporation; and
I.M. ELECTRIC, INC., a Florida corporation;

    Defendants.

_____/

COPY
RECEIVED FOR FILING

JAN 2 0 2009

SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

## COMPLAINT

COMES NOW the Plaintiff, HILLCREST BANK FLORIDA ("BANK"), by and through its

undersigned counsel, and files this its Complaint against the Defendants, 610 CLEMATIS RETAIL

PROPERTIES, LLC ("BORROWER"), ILIA MOGILEVSKY ("GUARANTOR"), 610 CLEMATIS

CONDOMINIUM ASSOCIATION, INC. and I.M. ELECTRIC, INC., and in furtherance thereof

says that:

### GENERAL ALLEGATIONS

1.    BANK is a banking institution with its principal place of business located in Collier

County, Florida.

2.    BORROWER is a dissolved Florida limited liability company with its principal place

of business located in Palm Beach County, Florida.

3.    GUARANTOR is an individual who resides in the State of New Jersey.

4.      On December 17, 2007, BORROWER executed a Promissory Note (the "Note") in favor of BANK in the principal amount of $2,200,000.00. A copy of that Note is attached hereto as Exhibit "A."

5.      To secure payment of that Note, on December 17, 2007, BORROWER executed and delivered a first Mortgage to BANK, a copy of which is attached hereto as Exhibit "B" (the "Mortgage"), on real property located in Palm Beach County, Florida, the legal description of which is more particularly described in the Mortgage. This Mortgage is recorded in the Public Records of Palm Beach County, Florida in Official Records Book 22343 at page 1269.

6.      BORROWER has defaulted with respect to its obligations under the Note and Mortgage in that BORROWER has failed to make the payments due thereunder beginning with the payment that came due on September 17, 2008.

7.      All conditions precedent to the filing of this action have been performed, excused or waived.

8.      BANK has retained the undersigned law firm to represent it in this matter and is obligated to pay the firm a reasonable fee for its services. BANK is entitled to recover its attorney's fees from the BORROWER according to the terms of the loan documents attached hereto.

## COUNT I - ACTION ON PROMISSORY NOTE

9.      Plaintiff realleges and reincorporates the allegations contained in paragraphs 1-8 as if fully set forth herein.

10.     This is an action for damages that exceed $15,000.00, exclusive of interest, court costs, and attorney's fees.

2

11.    BANK owns and holds the Note.

12.    BORROWER has defaulted on the Note as more specifically described above.

13.    BORROWER owes BANK $2,199,937.79 in principal on the Note, together with interest in the amount of $72,353.68 through January 12, 2009, with interest accruing at the daily rate of $488.88 thereafter, plus late charges, costs and attorney's fees.

**WHEREFORE**, Plaintiff demands judgment for damages against BORROWER, together with interest, court costs, attorneys' fees and any other relief that this Court deems just and proper.

## COUNT II - FORECLOSURE OF FIRST MORTGAGE

14.    Plaintiff realleges and reincorporates the allegations contained in paragraphs 1-13 as if fully set forth herein.

15.    This is an action to foreclose a mortgage on property located in Palm Beach County, Florida, which is more particularly described in Exhibit "B" attached hereto.

16.    BANK currently owns and holds the Note referred to in paragraph 4 above, and the Mortgage referred to in paragraph 5 above.

17.    The subject property is currently owned by BORROWER.

18.    BORROWER has defaulted under the Note and Mortgage referenced herein by, without limitation, failing to pay the amounts due under the Note on September 17, 2008 and all months subsequent thereto.

19.    BORROWER owes BANK $2,199,937.79 in principal on the Note, together with interest in the amount of $72,353.68 through January 12, 2009, with interest accruing at the daily rate of $488.88 thereafter, plus late charges, costs and attorney's fees.

20.    Defendant 610 CLEMATIS CONDOMINIUM ASSOCIATION, INC. is a Florida corporation, and may claim some interest in the subject property by virtue of that Declaration of Condominium recorded in the Public Records of Palm Beach County, Florida in Official Records Book 19653 at page 383. However, any and all claims of this Defendant in and to the subject property are inferior and subject to the claims of BANK.

21.    Defendant I.M. ELECTRIC, INC. is a Florida corporation, and may claim some interest in the subject property by virtue of that Notice of Commencement recorded in the Public Records of Palm Beach County, Florida in Official Records Book 22684 at page 658. However, any and all claims of this Defendant in and to the subject property are inferior and subject to the claims of BANK.

**WHEREFORE**, Plaintiff demands: (a) judgment of foreclosure for the amounts due BANK under the Mortgage and Note referenced herein, including principal, interest, late charges, costs, expenses and attorney's fees, and if such sums are not paid within the time established by this Court, that the subject property be sold to satisfy BANK's claims; (b) that Defendants, and all persons claiming under, by, through or against them since the filing of Plaintiff's Notice of Lis Pendens, be forever barred and foreclosed to all rights, title and interest in and to the real property; and (c) any other relief that this Court deems just and proper, including but not limited to, if necessary, entry of a deficiency judgment against BORROWER.

## COUNT III - ACTION ON GUARANTY

22.    The allegations set forth in paragraphs 1-20 are realleged as if fully set forth herein.

23.    On December 17, 2007, GUARANTOR executed and delivered to BANK an

4

Unconditional and Continuing Guaranty of BORROWER's obligations under the Note and Mortgage. A true and correct copy of the Unconditional and Continuing Guaranty is attached hereto as Exhibit "C."

24.     Pursuant to the terms of the Guaranty attached hereto, GUARANTOR is directly liable for all sums due to BANK as a result of BORROWER's defaults detailed above.

**WHEREFORE**, Plaintiff demands judgment for damages against GUARANTOR, together with interest, court costs, attorneys' fees and any other relief that this Court deems just and proper.

## <u>COUNT IV - FRAUD</u>

25.     Plaintiff realleges and reincorporates the allegations contained in paragraphs 1-8 as if fully set forth herein.

26.     This is an action for damages in excess of $15,000.

27.     Prior to the parties entering into the loan transaction described herein, GUARANTOR was required to provide BANK with certain financial information and disclosures upon which BANK relied in deciding to issue the loan described herein.

28.     As part of these disclosures, GUARANTOR provided BANK with a personal financial statement, a true and correct copy of which is attached hereto as Exhibit "D."

29.     In this personal financial statement, GUARANTOR represented to BANK that he owned the following parcels of real property—21535 Baccarat Lane, #203, Estero, Florida, and 773 Cresta Circle, West Palm Beach, Florida. He further represented that these properties were owned free and clear, had a combined approximate value of $845,000, and, as to the West Palm Beach property, generated gross rental income of $27,600 per year.

5

30.     In fact, these properties had been sold by GUARANTOR months prior to his execution of Exhibit "D", a material fact never disclosed to BANK.

31.     GUARANTOR made the representations in Exhibit "D" knowingly, and with the intention that BANK rely upon them in deciding to approve the loan described herein.

32.     The representations set forth in paragraph 28 above were material, and were false when made by GUARANTOR.

33.     BANK reasonably relied on these representations, and issued the loan referenced herein in reliance upon same.

34.     As a direct and proximate result of these fraudulent misrepresentations, BANK has been damaged.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant GUARANTOR, together with an award of interest, court costs, and any other relief that this Court deems just and proper.

Dated this ___ day of January, 2009.

COHEN, NORRIS, SCHERER,
WEINBERGER & WOLMER
Attorneys for Plaintiff
712 U.S. Highway One, Suite 400
North Palm Beach, FL 33408-7146
(561) 844-3600 - Telephone
(561) 842-4104 – Facsimile

By: _____
James S. Telepman, Esq.
Florida Bar No. 466786

6

SCANNED

JAN 2 4 2007

Hillcrest Bank FL

STATE OF FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $7,700.00 WERE PAID OF EVEN DATE HEREWITH AND AFFIXED TO THE NOTE AND CANCELLED. AND STATE OF FLORIDA NONRECURRING INTANGIBLE TAXES IN THE AMOUNT OF $4,400.00 WERE PAID OF EVEN DATE HEREWITH.

## HILLCREST BANK FLORIDA
## PROMISSORY NOTE

$2,200,000.00

Naples, Florida
*December 17th , 2007*

The undersigned, and if more than one, each of them jointly and severally (hereinafter called "Maker" or "Obligor"), promises to pay to the order of *HILLCREST BANK FLORIDA*, a Florida banking corporation (together with any holder hereof, called "Holder"), at 8889 Pelican Bay Blvd., Suite 200, Naples, FL 34108, or at such other place as Holder may from time to time designate in writing, the principal sum of *TWO MILLION TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($2,200,000.00)*, in the manner and with interest as stated below.

The undersigned promises to pay the indebtedness evidenced by this Note with interest as follows:

(a)     Payments of interest only (such payments to be adjusted based on the interest rate as set forth below), shall be due and payable monthly commencing January 17, 2008, and continuing on the 17th day of each month thereafter until the Maturity Date;

(b)     Interest shall be calculated on the loan as follows:

Interest shall be a fixed annual rate of interest of *Eight Percent (8.00%)* which percentage is equal to the sum of (i) the Prime Rate of Interest, plus (ii) three quarters of one percent (0.75%). "Prime Rate of Interest" means the floating, daily variable rate of interest identified as the national "Prime Rate" or the "Prime Rate of Interest" in *The Wall Street Journal*, or if such rate is unavailable in such publication, then the prime rate identified in another national financial publication selected by Bank, without reference to prime interest rates of any other financial institution. The Prime Rate of Interest may not necessarily be the lowest rate of interest charged by the Bank to any of its customers. Interest shall be calculated on the basis of the actual number of days elapsed over a three hundred sixty (360)-day year.

(c)     The entire remaining outstanding principal balance of the indebtedness evidenced hereby, together with all unpaid interest accrued thereon, shall be due and payable on December 17, 2010 ("Maturity Date").

(d)     All payments made hereunder shall first be applied to interest and the balance to principal.

Maker agrees that all loan fees and other prepaid finance charges are earned fully

HILLCREST BANK FLORIDA LOAN TO AIG CLEMATIS RETAIL PROPERTIES, LLC
PROMISSORY NOTE
PAGE 1 OF 7

EXHIBIT
"A"

as of the date of the Loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full payment of this Note, Maker understands that Holder is entitled to a minimum interest charge of ONE and 00/100 DOLLARS ($1.00). Other than Maker's obligation to pay any minimum interest charge, Maker may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed by Holder in writing, relieve Maker of Maker's obligation to continue to make payments of accrued, unpaid interest. Rather, such early payments will reduce the principal balance due. Maker agrees not to send Holder payments marked "paid in full" or "without recourse" or similar language.

A late charge equal to five percent (5%) of the payment amount shall be assessed for each payment not received at the principal office of Bank by the date five (5) days after the date such payment is due; provided, however, should the due date fall on a Saturday, Sunday or legal holiday in the State of Florida, then no late charge shall be assessed until the next Business Day. Borrower agrees that the damages to be sustained by the holder hereof for the detriment caused by any late payment are extremely difficult and impractical to ascertain, and that late charge of five percent (5%) of the payment amount due is a reasonable estimate of such damages, does not constitute interest, and is not a penalty. If any payment is dishonored, Obligor shall pay a fee to Holder of Thirty and 00/100 Dollars ($30.00) per returned or dishonored payment.

After the maturity or due date of this Note through acceleration or otherwise, interest shall accrue on the outstanding principal balance unpaid at the highest lawful rate until paid.

This Agreement and the instruments securing it have been executed and delivered in, and their terms and provisions are to be governed and construed by the laws of the State of Florida.

Prepayments may be made at any time without penalty. Prepayments shall not affect or vary the duty of the Maker to pay all obligations when due under this Note, or any other Loan Document, as defined in the Mortgage, and they shall not affect or impair the right of the Holder to pursue all remedies available to it hereunder, under the Mortgage securing this indebtedness, or under the other Loan Documents, as defined in the Mortgage, including, without limitation, the Mortgage and all related Loan Documents executed and delivered in connection with the original loan secured by the Mortgage or any of such Loan Documents.

Sums advanced hereunder are equally secured with and have the same priority as the original indebtedness and prior future advances secured by said Mortgage and are subject to all terms and provisions of said Mortgage and Loan Documents executed in connection herewith.

In no event shall the amount of interest due or payments in the nature of interest payable hereunder exceed the maximum contract rate of interest allowed by applicable law, as amended from time to time, and in the event any such payment is paid by the undersigned or received by the Holder, then such sum shall be credited as a payment of principal, unless the undersigned shall notify the Holder, in writing, that the undersigned

Case 9:10-cv-80120-JIC   Document 1-1   Entered on FLSD Docket 01/26/2010   Page 9 of 50

elects to have such excess sum returned to it forthwith.

Obligor shall be in default hereunder upon: (a) nonpayment of any interest or principal hereunder; (b) failure of Obligor or any guarantor to perform any agreement hereunder or otherwise a part of this loan transaction or any other current or future obligation in favor of Holder given by Obligor, any guarantor of this Loan, or any entity owned by Obligor or any guarantors of this Loan in whole or in part, or failure to pay when due any premium upon any life insurance policy held as Collateral hereunder; (c) the dissolution, termination of existence, insolvency, or business failure of Obligor or any guarantor to this Note, appointment of a receiver of any part of the property of any such party, assignment for the benefit of creditors by or the commencement of any proceedings in bankruptcy or insolvency by or against Maker or any guarantor; (d) the entry of a judgment against Obligor or any guarantor; (e) the issuing of any attachment or garnishment, or the filing of any lien against the property secured hereby; (f) the taking of possession of any substantial part of the property of Obligor or any guarantor at the instance of any governmental authority; (g) the merger, consolidation or reorganization of Obligor or any guarantor; (h) the determination by Holder that a material adverse change has occurred in the financial condition of Obligor or any guarantor from the condition set forth in the most recent financial statement of Obligor or any guarantor heretofore furnished to Holder or from the condition of Obligor or any guarantor as heretofore most recently disclosed to Holder in any manner; (i) falsity in any material respect of, or any material omission in, any representation or statement made to Holder by or on behalf of Obligor or any guarantor in connection with this Note; (j) the pledge, assignment, transfer or granting of a security interest by Obligor or any guarantor of any equity in any of the Collateral without the written consent of Holder; (k) the sale of any interest in Obligor of the then outstanding shares or other indices of ownership to any third party, without the prior written consent of Holder; (l) the death of Ilia Mogilevsky; or (m) any event of default under that certain Loan Agreement of even date or any Loan Document executed in conjunction herewith.

Holder shall have all of the rights and remedies of a creditor, mortgagee, and secured party under all applicable law. Without limiting the generality of the foregoing, upon the occurrence of any default hereunder, Holder may at its option and without notice or demand, declare the entire unpaid principal and accrued interest accelerated and due and payable at once, together with and all other Liabilities of any Obligor or any of such Liabilities selected by Holder. To the extent that any of the Collateral is personal property and the Holder elects to proceed with respect to it in accordance with the Uniform Commercial Code, then unless the Collateral is perishable or threatens to decline speedily in value is of a type customarily sold on a recognized market, Holder will give Maker reasonable notice of the time and place of any public or private sale thereof. The requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to any Maker at the address given below or at any other address shown on the records of Holder at least five days before the time of sale. Upon disposition of any Collateral after the occurrence of any default hereunder, Maker shall be and shall remain liable for any deficiency; and Holder shall account to Maker for any surplus, but Holder shall have the right to apply all or part of such surplus (or to hold the same as a reserve) against any or all other Liabilities of each or any Maker to Holder. Holder shall be entitled to collect post-foreclosure judgment interest at a rate equal to the lesser of (a) eighteen percent (18%) per annum, or (b) the maximum rate allowed by law.  Such rate may be referred to in the

Loan Documents as the "Default Rate."

This Note is secured by, among other things, the Mortgage. This Note is entitled to all the benefits and security of the Mortgage and the other collateral referred to therein and in the Loan Agreement and the other Loan Documents. A default under the Mortgage or under the Loan Agreement shall constitute a default under this Note.

This Note is guaranteed as provided by certain unlimited personal guaranty agreements of even date herewith, as the same may from time to time be amended, modified, extended, renewed or restated. This Note is entitled to all the benefits and the guaranty set forth and contained in the Guaranties and any other collateral referred to therein.

In addition to the warranties, representations and obligations contained in this Note, the Mortgage and the Loan Documents, Maker warrants that (i) there are no law suits or proceedings pending or threatened against or affecting Maker, and no proceedings before any governmental body are pending or threatened against Maker, (ii) Maker is not a party to or subject to any agreement or restriction that may have a material adverse effect on Maker's business, properties, or prospects, (iii) Maker has obtained all franchises, authorizations, patents, trademarks, copyrights, and other rights necessary to advantageously conduct its business and all are in full force and effect and are not in known conflict with the rights of others, (iv) Maker is in material compliance with all laws, regulations, rulings, court orders, injunctions, decrees, conditions or other requirements applicable to or imposed upon Maker by any law or by any governmental authority court or agency, (v) Maker has filed all required tax returns and reports that are now required to be filed by it in connection with any federal, state and local tax, duty or charge levied, assessed or imposed upon Borrower or its assets, including unemployment, social security and real estate taxes, (vi) Maker has paid all taxes which are now due and payable, (vii) no taxing authority has asserted or assessed any additional tax liabilities against Maker which are outstanding on this date, and Maker has not filed any extension of time for the payment of any tax or the filing of any tax return or report, and (viii) Maker has good and marketable title to the assets reflected on the most recent balance sheet submitted to Lender, free and clear from all liens and encumbrances of any kind except for (collectively, the "Permitted Liens"): (a) current taxes and assessments not yet due and payable, (b) liens and encumbrances, if any, reflected or noted on such balance sheet or notes thereto, (c) assets disposed of in the ordinary course of business, and (d) any security interest, pledges, assignments or mortgages granted to Lender to secure the repayment of performance of the Obligations. Obligor has no subsidiaries and is not a party to any partnership agreement.

The undersigned, as Borrower and all others who are or who shall become parties primarily or secondarily liable on this Note, whether as endorsers, guarantors or otherwise, hereby agree that this Note may be renewed one or more times, the time for payment of this Note or any renewal Note extended, the interest rate or other terms of the indebtedness evidenced hereby changed, any party released, or any action taken or omitted with respect to any collateral security, including surrender of such security or failure to perfect any lien thereon, without notice and without releasing any of them,

Case 9:10-cv-80120-JIC Document 1-1 Entered on FLSD Docket 01/26/2010 Page 11 of 50

except as otherwise expressly agreed in writing. All such parties waive presentment, demand for payment, protest and notice of nonpayment or dishonor and agree that failure of the holder to exercise any of its rights hereunder in any instance shall not constitute a waiver thereof in that or any other instance.

Time is of the essence of this contract, and, in case this Agreement is collected by law or through an attorney at law, or under advice therefrom, the undersigned agrees to pay all costs of collection, including reasonable attorneys' fees.

Such attorneys' fees and costs shall include, but not be limited to, fees and costs incurred in all matters of collection and enforcement, construction and interpretation, before, during and after suit, trial, proceedings and appeals, as well as appearances in and connection with any bankruptcy proceedings or creditor's reorganization or arrangement proceedings.

All notices and communications given under this Note shall be given in the manner provided in the Loan Agreement.

In this Note, whether the context so requires, the neuter gender includes the feminine and/or masculine, as the case may be; and the singular number includes the plural.

Release. AS A MATERIAL INDUCEMENT FOR HOLDER TO EXECUTE THIS AGREEMENT, MAKER DOES HEREBY RELEASE, WAIVE, DISCHARGE, COVENANT NOT TO SUE, ACQUIT, SATISFY AND FOREVER DISCHARGE HOLDER ITS OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS AND ITS AFFILIATES AND ASSIGNS FROM ANY AND ALL LIABILITY, CLAIMS, COUNTERCLAIMS, DEFENSES, ACTIONS, CAUSES OF ACTION, SUITS, CONTROVERSIES, AGREEMENTS, PROMISES AND DEMANDS WHATSOEVER IN LAW OR IN EQUITY WHICH MAKER EVER HAD, NOW HAS, OR WHICH ANY PERSONAL REPRESENTATIVE, SUCCESSOR, HEIR OR ASSIGN OF MAKER HEREAFTER CAN, SHALL OR MAY HAVE AGAINST HOLDER, ITS OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS, AND ITS AFFILIATES AND ASSIGNS, FOR, UPON OR BY REASON OF ANY MATTER, CAUSE OR THING WHATSOEVER THROUGH THE DATE THAT THIS AGREEMENT IS EXECUTED. MAKER FURTHER EXPRESSLY AGREES THAT THIS RELEASE AND WAIVER IS INTENDED TO BE AS BROAD AND INCLUSIVE AS PERMITTED BY THE LAWS OF THE STATE OF FLORIDA.

Waiver of Jury Trial. TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF MAKER BY EXECUTION HEREOF AND HOLDER BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO HOLDER TO ACCEPT THIS AGREEMENT. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED,

EXTENDED OR MODIFIED BY, THIS AGREEMENT.

Waiver of Bankruptcy Stay. MAKER HEREBY AGREES, IN CONSIDERATION OF THE RECITALS AND MUTUAL COVENANTS CONTAINED HEREIN, AND FOR OTHER GOOD AND VALUABLE CONSIDERATION, INCLUDING THE FORBEARANCE OF HOLDER FROM GOING TO TRIAL AND EXERCISING THEIR OTHER RIGHTS AND REMEDIES OTHERWISE AVAILABLE TO IT, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, THAT IN THE EVENT THAT MAKER SHALL FILE WITH ANY BANKRUPTCY COURT OF COMPETENT JURISDICTION OR BE THE SUBJECT OF ANY PETITION UNDER TITLE 11 OF THE UNITED STATES CODE THE AUTOMATIC STAY IMPOSED BY SECTION 362 OF TITLE 11 OF THE UNITED STATES CODE IS WAIVED, AND SUCH WAIVER CONSTITUTES "CAUSE" PURSUANT TO 11 U.S.C. SECTION 362(d)(1) FOR THE IMMEDIATE LIFTING OF THE AUTOMATIC STAY IN FAVOR OF HOLDER, AND MAKER HEREBY KNOWINGLY AND IRREVOCABLY WAIVES ALL DEFENSES AND OBJECTIONS TO SUCH LIFTING OF THE AUTOMATIC STAY.

IN WITNESS WHEREOF, the undersigned have signed and sealed this Agreement on the day and date first above written.

*610 CLEMATIS RETAIL PROPERTIES, LLC, a Florida limited liability company*

By: _____

Ilia Mogilevsky
Its: Manager

(CORPORATE SEAL)

Address:
111 Rumford Way
Manalapan, New Jersey

STATE OF FLORIDA
COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this *17th* day of *December, 2007* by *Ilia Mogilevsky*, as *Manager* of *610 CLEMATIS RETAIL PROPERTIES, LLC, a Florida limited liability company*.  He/She is personally known to me or has produced _____ (type of identification) as identification and did (did not) take an oath.  NOTE: If a type of identification is not inserted in the blank provided, then the person executing this instrument was personally known to me.  If the words in the parenthetical "did not" are not circled, then the person executing this instrument did take an oath.

(SEAL)

Signature _____

_____
(Type or print Name of Acknowledger)

SCOTT J. WORTMAN
MY COMMISSION # DD99515
EXPIRES: January 10, 2010
Bonded Thru Notary Public Underwriters



SCANNED

MAR 1 4 2008

Hillcrest Bank FL

CFN 20070575519
OR BK 22343 PG 1269
RECORDED 12/26/2007 15:56:44
Palm Beach County, Florida
AMT 2,200,000.00
Deed Doc 7,700.00
Intang 4,400.00
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 1269 - 1286; (18pgs)

THIS INSTRUMENT PREPARED
BY AND RETURN TO:
Michael L. Mitchell, Esq.
MORRISON & CAUDILL, PL
9013 Strada Stell Court, Suite 105
Naples, Florida 34109

STATE OF FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $7,700.00 WERE PAID OF EVEN DATE HEREWITH AND
AFFIXED TO THE NOTE AND CANCELLED, AND STATE OF FLORIDA NONRECURRING INTANGIBLE TAXES IN THE AMOUNT OF
$4,400.00 WERE PAID OF EVEN DATE HEREWITH.

## HILLCREST BANK FLORIDA
## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT is made this 17th day of December, 2007, by 610 CLEMATIS RETAIL PROPERTIES, LLC, a Florida limited liability company, whose address is 111 Rumford Way, Manalapan, New Jersey ("Mortgagor"), in favor of HILLCREST BANK FLORIDA, a Florida banking corporation, whose address is 8889 Pelican Bay Blvd., Suite 200, Naples, FL 34108 ("Mortgagee").

WITNESSETH:

WHEREAS, Mortgagee has made a loan of even date herewith to Mortgagor in the original principal amount of TWO MILLION TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($2,200,000.00) and Mortgagor is justly indebted to Mortgagee in the foregoing amount in lawful money of the United States, and Mortgagor has agreed to pay the same, with interest thereon, according to the terms of that certain Promissory Note made by Mortgagor to the order of Mortgagee in the original principal amount of TWO MILLION TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($2,200,000.00), bearing even date herewith, with final payment being due on or before December 17, 2010, unless otherwise extended by the Mortgagee as provided in the Promissory Note (such Promissory Note being hereinafter referred to as the "Note").

NOW, THEREFORE, to secure the performance and observance by Mortgagor of all covenants and conditions in the Note and the indebtedness evidenced thereby and in this instrument and in all other instruments securing the Note and in order to charge the properties, interests and rights hereinafter described with such payment, performance or observance, and for and in consideration of the sum of Ten and 00/100 Dollars ($10.00) this date paid by Mortgagee to Mortgagor, and for such other valuable consideration, the receipt of which is acknowledged, Mortgagor does hereby grant, bargain, sell, alienate, remise, release, convey, assign, transfer, mortgage, hypothecate, pledge, deliver, set over, warrant and confirm unto Mortgagee, its successors and assigns forever, a security interest in and fee simple title to the following properties:



EXHIBIT
"B"

Case 9:10-cv-80120-JIC   Document 1-1   Entered on FLSD Docket 01/26/2010   Page 15 of 50

## THE MORTGAGED PROPERTY

The term "Mortgaged Property" as used herein shall be as hereinafter defined.

(A)   THE LAND.   All that parcel and tract of land located in the County of Palm Beach, State of Florida (the "Land"), described in Exhibit "A" attached hereto and made a part hereof;

(B)   THE IMPROVEMENTS.   Together with all buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all fixtures, machinery, appliances, equipment, and personal property of every nature whatsoever now or hereafter owned by Mortgagor and located in or on, or attached to, or used or intended to be used in connection with or with the operation of, the Land, buildings, structures or other improvements, including all extensions, additions, improvements, betterments, renewals and replacements to any of the foregoing and all of the right, title and interest of Mortgagor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made by Mortgagor or on its behalf (the "Improvements");

(C)   EASEMENTS OR OTHER INTERESTS.   Together with all easements, zoning variances and exceptions, rights of way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the property hereinabove described, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of Mortgagor of, in and to the same, including but not limited to all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the property described in paragraphs (A), (B) and (C) hereof or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the property described in paragraphs (A), (B) and (C) hereof or any part thereof, or to any rights appurtenant thereto, and all proceeds of any sales or other dispositions of the property described in paragraphs (A), (B) and (C) hereof or any part thereof.

(D)   ASSIGNMENT OF RENTS.   Together with all rents, royalties, issues, profits, revenue, income and other benefits from any property described in paragraphs (A), (B) and (C) hereof to be applied against the indebtedness and other sums secured hereby, provided, however, that permission is hereby given to Mortgagor so long as no default has occurred hereunder, to collect, receive, take, use and enjoy such rents, royalties, issues, profits, revenue, income and other benefits as they become due and payable, but not more than one month in advance thereof. The foregoing assignment shall be fully operative without any further action on the part of either party and specifically Mortgagee shall be entitled, at its option upon the occurrence of a default hereunder, to all rents, royalties, issues, profits, revenue, income and other benefits from any property described in paragraphs (A), (B) and (C) hereof whether or not Mortgagee takes possession of such property described in paragraphs (A), (B) and (C) hereof. Upon any such default

hereunder, the permission hereby given to Mortgagor to collect such rents, royalties, issues, profits, revenue, income and other benefits from the property described in paragraphs (A), (B) and (C) hereof shall terminate and such permission shall not be reinstated upon a cure of the default without the specific consent of Mortgagee.  Neither the exercise of any rights under this paragraph by Mortgagee nor the application of any such rents, royalties, issues, profits, revenue, income or other benefits to the indebtedness and other sums secured hereby, shall cure or waive any default or notice of default hereunder or invalidate any act done pursuant hereto or to any such notice, but shall be cumulative of all other rights and remedies.

(E)     ASSIGNMENT OF LEASES.   Together with all right, title, and interest of Mortgagor in and to any and all leases now or hereafter on or affecting any property described in paragraphs (A), (B) and (C) hereof, together with all security therefor and all monies payable thereunder, subject, however, to the conditional permission hereinabove given to Mortgagor to collect the rentals under any such lease. The foregoing assignment of any lease shall not be deemed to impose upon Mortgagee any of the obligations or duties of Mortgagor provided in any such lease, and Mortgagor agrees to fully perform all obligations of the lessor under all such leases.   Upon Mortgagee's request, Mortgagor agrees to send to Mortgagee a list of all leases covered by the foregoing assignment and as any such lease shall expire or terminate or as any new lease shall be made, Mortgagor shall so notify Mortgagee in order that at all times Mortgagee shall have a current list of all leases affecting the property described in paragraphs (A), (B) and (C) hereof. Mortgagee shall have the right, at any time and from time to time, to notify any lessee of the rights of Mortgagee as provided by this paragraph..  From time to time, upon request of Mortgagee, Mortgagor shall specifically assign to Mortgagee as additional security hereunder, by an instrument in writing in such form as may be approved by Mortgagee, all right, title and interest of Mortgagor in and to any and all leases now or hereafter on or affecting the Mortgaged Property, together with all security therefor and all monies payable thereunder, subject to the conditional permission hereinabove given to Mortgagor to collect the rentals under any such lease. Mortgagor shall also execute and deliver to Mortgagee any notification, financing statement or other document reasonably required by Mortgagee to perfect the foregoing assignment as to any such lease.

This instrument constitutes an absolute and present assignment of the rents, royalties, issues, profits, revenue, income and other benefits from the Mortgaged Property. Mortgagor to collect, receive, take, use and enjoy the same as provided hereinabove; provided, further, that the existence or exercise of such right of Mortgagor shall not operate to subordinate this assignment to any subsequent assignment, in whole or in part, by Mortgagor, and any such subsequent assignment by Mortgagor shall be subject to the rights of Mortgagee hereunder.

(F)     FIXTURES AND PERSONAL PROPERTY.  Together with a security interest in all fixtures, fittings, furnishings, appliances, apparatus, equipment, machinery and other personal property, including, without limitation, all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, ovens, elevators and motors, bathtubs, sinks, water closets, basins, pipes, faucets and other air conditioning, plumbing, and heating fixtures, mirrors, mantles, refrigerating plant, refrigerators, iceboxes, dishwashers, carpeting, furniture, laundry equipment, cooking apparatus and appurtenances, and all building material, supplies and equipment now located on or hereafter delivered to the

Land and intended to be installed therein; all other fixtures and personal property of whatever kind and nature at present contained in or hereafter placed in any building standing on the Land and intended to be installed therein; and all renewals or replacements thereof or articles in substitution thereof; and all proceeds and profits thereof and all of the estate, right, title and interest of Mortgagor in and to all property of any nature whatsoever, now or hereafter situated on the Land or intended to be used in connection with the operation thereof and intended to be installed therein; all leases and use agreements of machinery, equipment and other personal property of Mortgagor in the categories hereinabove set forth, under which Mortgagor is the lessee of, or entitled to use, such items, and all deposits made therefor; and Mortgagor (Debtor) hereby grants to Mortgagee (Creditor) a security interest in all fixtures, rights and personal property described herein. This Mortgage is a self operative security agreement with respect to such property, but Mortgagor agrees to execute and deliver on demand such other security agreements, financing statements, continuation statements and other instruments as Mortgagee may request in order to perfect its security interest or to impose the lien hereof more specifically upon any of such property and Mortgagor hereby constitutes and appoints Mortgagee as Agent and attorney-in-fact to make, execute, deliver and record any instruments for the purpose of effecting the lien and security interests of this Mortgage and continuing the effect thereof. The foregoing power of attorney is irrevocable and coupled with an interest. Mortgagee shall have all the rights and remedies in addition to those specified herein of a secured party under the Uniform Commercial Code.

Everything referred to in paragraphs (A), (B), (C), (D), (E), and (F) hereof and any additional property hereafter acquired by Mortgagor and subject to the lien of this mortgage or intended to be so is herein referred to as the "Mortgaged Property".

To have and to hold the Mortgaged Property and all parts thereof unto Mortgagee, its successors and assigns, for enforcing the payment of the Note when due and payable according to the true interest and meaning of the stipulations and provisions of the Note, and the payment and performance of all other obligations of Mortgagor hereunder and under the Note. The foregoing amounts evidenced by the Note, or due and payable by Mortgagor under the Note, or under the provisions hereof including advances by Mortgagee for the purpose of paying taxes or premiums on insurance on the Mortgaged Property or to repair, maintain, or improve the Mortgaged Property and all renewal or renewals and extension or extensions of the Note are secured hereby and collectively referred to herein as "Secured Indebtedness"; provided, however, that upon the express conditions that if Mortgagor, its successors and assigns shall well and truly pay or cause to be paid unto the holder of the Note and Secured Indebtedness and shall well and truly keep, observe and perform all and singular the covenants and provisions in the Note and any other instrument securing the Note, this instrument shall be canceled to its own proper use and benefit forever, subject, however, to the terms and conditions herein.

## ARTICLE ONE
## COVENANTS

1.01    Performance of Note, Mortgage, etc. Mortgagor shall perform, observe and comply with all provisions hereof, of the Note and of every other instrument securing the Note, and will promptly pay all sums required to be paid by Mortgagor under the Note and pursuant to the provisions of this Mortgage and of every other instrument securing the Note when payment shall become due, all without deduction or credit for taxes or other similar charges paid by Mortgagor.

1.02    Warranty of Title. Mortgagor covenants and warrants that it is seized of an indefeasible estate in fee simple in the Land and any other real property hereby mortgaged, has good and absolute title to all existing personal property hereby mortgaged or made subject to the security interest hereby created and has good right, full power and lawful authority to convey, mortgage and encumber the same as provided herein; that Mortgagee may at all times peaceably and quietly enter upon, and upon written notice to Mortgagor of an occurrence of default and opportunity to cure, hold, occupy and enjoy the Land and any other real property hereby mortgaged and every part thereof; that the Land, real property and all existing personal property hereby mortgaged or made subject to the security interest hereby created are free and clear of all liens, security interests, charges and encumbrances whatsoever, except for those certain matters set forth in Exhibit "B" attached hereto and made a part hereof ("Permitted Exceptions"). Mortgagor shall and will make such further assurances to perfect Mortgagor's fee simple title to the Land and the real property hereby mortgaged, and the title to the personal property hereby mortgaged or made subject to the security interest hereby created as may reasonably be required. Mortgagor fully warrants the title to the Land, real property and all existing personal property hereby mortgaged or made subject to the security interest hereby created and every part thereof, and will forever defend the same against the claims of all persons whomsoever.

1.03    Transfer of Property. Mortgagor shall not sell, convey, transfer, lease or further encumber any interest in or any part of the Mortgaged Property, without the prior written consent of Mortgagee.

1.04    Further Assurances. At any time and from time to time, upon Mortgagee's request, Mortgagor shall make, execute and deliver or cause to be made, executed and delivered to Mortgagee and, where appropriate, shall cause to be recorded or filed, from time to time, in such offices and places as shall be deemed desirable by Mortgagee any and all such further mortgages, instruments of further assurance, certificates and other documents as Mortgagee, in its reasonable discretion, may consider necessary or desirable in order to effectuate, complete, perfect, or to continue and preserve the obligations of Mortgagor under this Mortgage, and the lien of this Mortgage as a first and prior lien upon all of the Mortgaged Property (subject to the Permitted Exceptions), whether now owned or hereafter acquired by Mortgagor.

1.05    Taxes. Mortgagor shall pay, when due and payable, (a) all taxes, assessments, general or special, and other charges levied on, or addressed, placed or made against the Mortgaged Property, this instrument or the Secured Indebtedness or any interest of Mortgagee in the Mortgaged Property or the obligations secured hereby; (b) all premiums on policies of fire and other hazard insurance covering the Mortgaged Property, as required herein. Mortgagor shall promptly deliver to Mortgagee receipts showing payment in full of all of the above items. Upon demand by Mortgagee, Mortgagor shall

pay to Mortgagee, together with and in addition to the payment of principal and interest payable under the terms of the Note, on the installment-paying dates of the Note, until the Secured Indebtedness is paid in full or until notification from Mortgagee to the contrary, an amount reasonably sufficient (as estimated by Mortgagee) to provide Mortgagee with funds to pay said taxes, assessments, insurance premiums, rents and other charges next due so that Mortgagee will have sufficient funds on hand to pay same thirty (30) days before the date of which they become past due. In no event shall Mortgagee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. Mortgagor shall furnish to Mortgagee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Mortgagee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges.

Mortgagee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall become part of the Secured Indebtedness and bear interest at the rate provided in the Note from date of advancement. Mortgagee may apply credits held by it for the above charges or any part thereof on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Land shall, without assignment thereof, inure to the benefit of the successor-owner of the Land and shall be applied under and subject to all of the provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

Notwithstanding the foregoing, Mortgagor shall have the right to contest the validity of any taxes, assessments or other charges provided, however, that in no event shall Mortgagor permit a lien to attach to the Mortgaged Property.

1.06    Insurance.

(a)    If applicable, Mortgagor shall keep the Mortgaged Property insured for the benefit of Mortgagee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke and such other hazards as Mortgagee may from time to time require, by a standard fire and extended coverage insurance company, all in amounts approved by Mortgagee not exceeding one hundred percent (100%) of full replacement cost; all insurance herein provided for shall be in a form and issued by companies approved by Mortgagee; and regardless of the types or amounts of insurance required and approved by Mortgagee, Mortgagor shall assign and deliver to Mortgagee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insure against any loss or damage to the Mortgaged Property, with loss payable to Mortgagee, without contribution by Mortgagee, pursuant to the New York Standard or other mortgagee clause satisfactory to Mortgagee. If Mortgagee, by reason of such insurance, receives any

money for loss or damage, such amount may, at the option of Mortgagor, such decision to be made by Mortgagor in good faith, be retained and applied by Mortgagee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Mortgagor for the repair or replacement of the Mortgaged Property or any part thereof, or for any other purpose or object satisfactory to Mortgagee, but Mortgagee shall not be obligated to see to the proper application of any amount paid over to Mortgagor.

(b)     Not less than thirty (30) days prior to the expiration date of each policy of insurance required of Mortgagor pursuant to this Article, and of each policy of insurance held as additional collateral to secure the Secured Indebtedness, Mortgagor shall deliver to Mortgagee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Mortgagee.

(c)     In the event of a foreclosure of this Mortgage, the purchaser of the Mortgaged Property shall succeed to all the rights of Mortgagor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Mortgagee, with respect to all property conveyed and to be conveyed by this Mortgage, pursuant to the provisions of this Article.

(d)     Any prepayment of the indebtedness evidenced by the Note, whether in whole or in part resulting from the application of insurance proceeds, shall be without any premium, charge or expense whatsoever.

1.07    Care of Mortgaged Property.   Mortgagor shall maintain the Mortgaged Property in good condition and repair, shall not commit or suffer any waste to the Mortgaged Property, and shall comply with, or cause to be complied with, all restrictive covenants, statutes, ordinances and requirements of any governmental authority relating to the Mortgaged Property and the use thereof or any part thereof. In the event of a casualty affecting the Mortgaged Property or any condemnation proceeding affecting the Mortgaged Property, Mortgagor shall promptly repair, restore, replace or rebuild any part of the Mortgaged Property, now or hereafter encumbered by this Mortgage. Mortgagor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Mortgagor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Mortgaged Property or any part thereof without the prior written consent of Mortgagee. Mortgagee and any persons authorized by Mortgagee shall have the right to enter and inspect the Mortgaged Property at all reasonable times and access thereto shall be permitted for that purpose.

1.08    Condemnation.   Notwithstanding any taking of any property, herein conveyed and agreed to be conveyed, by eminent domain, alteration of the grade of any street or other injury to, or decrease in value of, the Mortgaged Property by any public or quasi-public authority or corporation, Mortgagor shall continue to pay principal and interest on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Mortgagee of any award or payment for such taking, alterations, injury or decrease in value of the Mortgaged Property, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; and said award or payment may, at the option of Mortgagor, such decision to be made by Mortgagor in

good faith, be retained and applied by Mortgagee toward payment of the Secured Indebtedness or be paid over, wholly or in part, to Mortgagor for the purpose of altering, restoring or rebuilding any part of the Mortgaged Property which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Mortgaged Property, or for any other purpose or object satisfactory to Mortgagee, but Mortgagee shall not be obligated to see to the application of any amount paid over to Mortgagor. If, prior to the receipt by Mortgagee of such award or payment, the Mortgaged Property shall have been sold on foreclosure of this Mortgage, Mortgagee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Mortgage shall have been sought or recovered or denied, and of the reasonable counsel fees, costs and disbursements incurred by Mortgagee in connection with the collection of such award or payment.

1.09    Financial Statements.  Mortgagor and any guarantor shall furnish, prior to closing and at such other intervals as may be required by the Mortgagee pursuant to the terms of the Loan Agreement, an originally signed financial statement, Federal Tax Returns, and current profit and loss statements.

The financial statements required above are a material inducement for Mortgagee committing to make this Loan, and any failure by Mortgagor or any guarantor to provide the required financial statements during the term of the Loan shall be a material event of default and shall entitle Mortgagee to accelerate the Loan at its option.

In the event that Mortgagor or Guarantor fail to furnish the financial statement or tax returns referenced herein within the time required, Bank may at its option, rather than accelerating the Loan, increase the interest rate herein by twenty five (25) basis points from the time of the event of default, and continue to increase the interest rate by an additional 25 basis points for each thirty (30) day period which the event of default remains uncured. Once the documents required herein are provided, the interest rate shall return to the interest rate provided in the Promissory Note which this Mortgage secures.

### ARTICLE TWO
### DEFAULTS

2.01 Event of Default. The term Event of Default, wherever used in this Mortgage, shall mean any one or more of the following events and each of the following events shall constitute an event of default hereunder:

(a)    Failure by Mortgagor to pay any installment of principal or interest due under the Note; or

(b)    Failure by Mortgagor to pay, as and when due and payable, the Secured Indebtedness; or

(c)    Failure by Mortgagor, any guarantor, or any entity owned in whole or in part by Mortgagor or any guarantor, to perform or observe any of the covenants,

Case 9:10-cv-80120-JIC   Document 1-1   Entered on FLSD Docket 01/26/2010   Page 22 of 50

agreements or conditions on their part to be performed in any instrument, including but not limited to this Mortgage, securing any indebtedness in favor of Mortgagee; or

(d)     Without limiting the foregoing, should Mortgagor violate any provision of any Lease as defined in that certain Assignment of Rents and Leases by Mortgagor in favor of Mortgagee of even date with respect to the Mortgaged Property; or

(e)     Without limiting the foregoing, should any event of default occur under any term or condition of the Loan Agreement of even date given by Mortgagor in favor of Mortgagee; or

(f)     Should Mortgagor, or any guarantor of the Secured Indebtedness or any portion thereof (all of such parties being hereinafter referred to as "Obligors") make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of any of the Obligors or of any of the property of any of the Obligors be appointed, or should any petition for the bankruptcy, reorganization or arrangement of any of the Obligors, pursuant to the Federal Bankruptcy Act or any similar statute, be filed by any of the Obligors, or should any such proceeding be filed against any of the Obligors and remain undismissed for a period of thirty (30) days, or should any of the Obligors in any proceeding admit its insolvency or inability to pay its debts as they fall due or should any of the Obligors be liquidated or dissolved or its articles of incorporation expire or be revoked; or

(g)     Should Mortgagor sell, encumber, convey or otherwise transfer any interest in the Mortgaged Property or any portion thereof, whether or not such interest is subject or subordinate to the interest of Mortgagee, without prior written consent of Mortgagee; or

(h)     The sale or other disposition of any interest in member's ownership in Mortgagor to any third party, without the written consent of Mortgagee; or

(i)     Failure by Obligors to pay, as and when due and payable, any installment of principal and/or interest due under any other obligation of Obligors to Mortgagee, whether such obligation shall currently exist or shall arrive at anytime during the term of this Mortgage.

(j)     Any default occurs by Mortgagor or Guarantor under any agreement with another financial institution, which default is not corrected within the cure period provided in such agreement, if any

2.02    Acceleration of Maturity.  If an Event of Default shall have occurred, after applicable notice and cure periods, Mortgagee may, upon notice and demand to Mortgagor, as set forth in the Note, declare the outstanding principal amount of the Note and the interest accrued thereon, and all other sums secured hereby, to be due and payable immediately and upon such declaration such principal and interest and other sums shall immediately become and be due and payable without demand or notice.

2.03    Power of Enforcement.  If, after applicable notice and cure periods, an Event of Default shall have occurred, Mortgagee may, in accordance with applicable law, either with or without entry or taking possession as hereinabove provided or otherwise,

proceed by suit or suits at law or in equity or by any other appropriate proceeding or remedy; (a) to enforce payment of the Note or the performance of any term hereof or any other right; (b) to foreclose this Mortgage and to sell, in its entirety or in separate lots or parcels, the Mortgaged Property, under the judgment or decree of a court or courts of competent jurisdiction; and (c) to pursue any other remedy available to it. Mortgagee shall take action either by such proceedings or by the exercise of its powers with respect to entry or taking possession, or both, as Mortgagee may determine.

2.04   Proceeds of Foreclosure.   In the event the Mortgaged Property or any portion thereof shall be sold in foreclosure proceedings or other proceedings that may be authorized by law, the proceeds of such sale shall be applied as follows: first, to the payment of all expenses incurred hereunder, including reasonable attorney's fees, as may be necessary for the collection of the Secured Indebtedness or any part thereof and the foreclosure of this Mortgage; second, to the payment, with interest as provided herein, of whatever sum or sums Mortgagee may have paid or become liable to pay in carrying out the objects, terms and stipulations of this Mortgage, including specifically, without limitation, sums paid for taxes and insurance; third, to the payment and satisfaction of the Secured Indebtedness and the balance, if any, being payable to Mortgagor or to such other person or entity who shall by law be entitled to such balance.

2.05   Leases.   Mortgagee, at its option, is authorized to foreclose this Mortgage, subject to the rights of any tenants of the Mortgaged Property, if any, and the failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted by Mortgagor to be, a defense to any proceedings instituted by Mortgagee to collect the Secured Indebtedness or to collect any deficiency remaining unpaid after the foreclosure sale of the Mortgaged Property.

2.06   Purchase by Mortgagee.   Upon any such foreclosure sale, Mortgagee may bid for and purchase the Mortgaged Property and, upon compliance with the terms of sale and applicable law, may hold, retain and possess and dispose of such property in its own absolute right without further accountability to Mortgagor.

2.07   Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws.   Mortgagor agrees to the full extent permitted by law that in case of a default on its part hereunder, neither Mortgagor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the absolute sale of the Mortgaged Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprising the Mortgaged Property marshalled upon any foreclosure of the lien hereof and agrees that Mortgagee or any court having jurisdiction to foreclose such lien may sell the Mortgaged Property in part or as an entirety.

2.08   Receiver.   If, after applicable notice and cure periods, an Event of Default shall have occurred, Mortgagee, to the extent permitted by law and without regard to the value or occupancy of the Mortgaged Property, shall be entitled as a matter of right if it so

elects to the appointment of a receiver to enter upon and take possession of the Mortgaged Property and to collect all rents, revenues, issues, income, products and profits thereof and apply the same as the court may direct. The receiver shall have all rights and powers permitted under the laws of the state where the Land is located and such other powers as the court making such appointment shall confer. The expenses, including the receiver's fees, attorney's fees, costs and agent's compensation, incurred pursuant to the powers herein contained shall be secured by this Mortgage and become part of the Secured Indebtedness, bear interest at the rate provided in the Note and be immediately due and payable. The right to enter and take possession of and to manage and operate the Mortgaged Property, and to collect the rents, issues and profits thereof, whether by a receiver or otherwise, shall be cumulative to any other right or remedy hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof. Mortgagee shall be liable to account only for such rents, issues and profits actually received by Mortgagee. Notwithstanding the appointment of any receiver or other custodian, Mortgagee shall be entitled as pledgee to the possession and control of any cash, deposits, or instruments at the time held by, or payable or deliverable under the terms of this Mortgage, to Mortgagee.

2.09    Suits to Protect the Mortgaged Property. Mortgagee shall have the power and authority to institute and maintain any suits and proceedings as Mortgagee may deem advisable (a) to prevent any impairment of the Mortgaged Property by any acts which may be unlawful or any violation of this Mortgage, (b) to preserve or protect its interest in the Mortgaged Property, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to Mortgagee.

2.10 ·  Delay or Omission No Waiver. No delay or omission of Mortgagee or of any holder of the Note to exercise any right, power or remedy accruing upon any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to waive any such Event of Default or to constitute acquiescence therein. Every right, power and remedy given to Mortgagee may be exercised from time to time and as often as may be deemed expedient by Mortgagee.

2.11    No Waiver of One Default to Affect Another. No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon. If Mortgagee (a) grants forbearance or an extension of time for the payment of any of the Secured Indebtedness; (b) takes other or additional security for the payment thereof; (c) waives or does not exercise any right granted in the Note, this instrument or any other instrument securing the Note; (d) releases any part of the Mortgaged Property from the lien of this instrument, or any other instrument securing the Note; (e) consents to the filing of any map, plat or replat of the Land; (f) consents to the granting of any easement on the Land; or (g) makes or consents to· any agreement changing the terms of this instrument or subordinating the lien or any charge hereof, no such act or omission shall release, discharge, modify, change or affect the original liability under the Note, this Mortgage or otherwise of any party liable thereunder or hereunder or any subsequent purchaser of the Mortgaged Property or any part thereof or any maker, co-signer, endorser, surety or

guarantor. No such act or omission shall preclude Mortgagee from exercising any right, power or privilege herein granted or intended to be granted in case of any Event of Default then existing or of any subsequent Event of Default. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Mortgaged Property, Mortgagee, without notice to any person, firm or corporation, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Mortgaged Property or the Secured Indebtedness, or with reference to any of the terms or conditions hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any of the liabilities or undertakings hereunder.

2.12    *Discontinue Proceedings: Position of Parties Restored.*  If Mortgagee shall have proceeded to enforce any right or remedy under this Mortgage by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Mortgagee, then and in every such case Mortgagor and Mortgagee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Mortgagee shall continue as if no such proceeding had occurred or had been taken.

2.13    *Remedies Cumulative.*  No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage or any other instrument securing the Note is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note or any other instrument securing the Note, now or hereafter existing at law, in equity or by statute.

ARTICLE THREE
MISCELLANEOUS PROVISIONS

3.01    *Heirs, Successors, and Assigns Included in Parties.*  Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Mortgage, by or on behalf of Mortgagor or Mortgagee, shall bind and inure to the benefit of their respective heirs, successor and assigns, whether so expressed or not.

3.02    *Addresses for Notices, etc.*

(a)    Any notice, report, demand or other instrument authorized or required to be given or furnished under this Mortgage to Mortgagor or Mortgagee shall be deemed given or furnished when addressed to the party intended to receive the same, at the address of such party on the first page hereof, and delivered at such address or deposited in the United States mail as first class certified mail, return receipt requested, postage paid, whether or not the same is actually received by such party.

(b)    Either party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other party, but no such notice of change shall be effective unless and until received by such other party.

(c)    A courtesy copy of any notice required under this Section 3.02 shall also be delivered to Mortgagee's counsel, Michael L. Michetti, Esq., MORRISON & CAUDILL, PL, 9010 Strada Stel Court, Suite 105, Naples, Florida 34109.

3.03    Headings.    The headings of the articles, sections, paragraphs and subdivisions of this Mortgage are for convenience of reference only, are not to be considered a part hereof, and shall not limit or expand or otherwise affect any of the terms hereof.

3.04    Invalid Provisions to Affect No Others.    In the event any of the covenants, agreements, terms or provisions contained in the Note, this Mortgage or any other instrument securing the Note shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein and in the Note and any other instrument securing the Note shall be in no way affected, prejudiced or disturbed thereby.

3.05    Changes, etc.    Neither this Mortgage nor any term hereof may be changed, waived, discharged or terminated orally, or by any action or inaction, but only by an instrument in writing signed by the party against which enforcement of the change, waive, discharge or termination is sought.    Any agreement hereafter made by Mortgagor and Mortgagee relating to this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.

3.06    Governing Law.    The performance required by this instrument shall, insofar as is possible, be rendered to Mortgagee at its office in Naples, Florida.    Mortgagor and Mortgagee intend that the validity and construction of the obligations secured by this instrument and the enforcement of this Mortgage shall be governed by the laws of the State of Florida.    Should any obligation or remedy under this instrument be invalid or unenforceable under the laws provided herein to govern, then the laws of another state whose laws can validate and apply to this instrument shall apply.

3.07    Default Rate.    The Default Rate shall be the rate of interest provided in the Note, on the amount of the Secured Indebtedness, as of the date of an Event of Default.

3.08    Remedies.    Mortgagee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Mortgage, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Mortgagee thereafter to enforce any appropriate remedy against the Mortgagor, including an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

3.09    Rights of Mortgagee.    The rights of Mortgagee, granted and arising under the clauses and covenants contained in this Mortgage and the Note, shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Mortgagee may have in law or equity, and none of them shall be in exclusion of the others; and all of them are cumulative to the remedies for collection of Indebtedness, enforcement of rights under mortgages, and preservation of security as provided at law.

No act of Mortgagee shall be construed as an election to proceed under any one provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

3.10   _Covenants of Mortgagor._   The covenants of Mortgagor herein are covenants running with the land and the title to the Mortgaged Property and touch and concern the Mortgaged Property.

### ARTICLE FOUR
### LENDING PROVISIONS

4.01   _Future Advances._   The total amount of indebtedness that may be so secured may decrease or increase from time to time, within twenty (20) years from the date hereof, but the total unpaid balance so secured at one time shall not exceed TEN MILLION AND 00/100 DOLLARS ($10,000,000.00) plus interest thereon, and any disbursements made for the payment of taxes, levies, or insurance on the Property, with interest on such disbursements at the default rate provided in the Note. In addition to the increases in the indebtedness permitted above which shall be secured by this Mortgage, this Mortgage shall also secure any extensions, amendments, modifications, or alterations of the Note, including, but not limited to, extensions, amendments, modifications, or alterations made by the Lender that (i) increase or decrease the interest paid on the original principal balances of the Note and/or any future advances made thereof; (ii) re-amortize principal balances of the Note and/or any future advances made thereof; (iii) alter the maturity date of the Note and/or any future advances made thereof; (iv) alter method of payment of the Note and/or any future advances made thereof; or (v) alter the timing of principal payments under the Note and/or any future advances made thereof, including converting a loan to a balloon mortgage.

4.02   _Performance of Labor or Furnishing of Material._   Nothing in this instrument shall: (i) constitute any consent or request by Mortgagee, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof, or (ii) give Mortgagor any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in such fashion as would permit the making of any claim against Mortgagee, or the holder of the Note in respect thereof or any claim that any claim of lien based on the performance of such labor or services or the furnishing of any such materials or other property is prior to the lien of this instrument.

4.03   _Interest Rate._   Mortgagor and Mortgagee acknowledge and agree that the maximum rate of interest which Mortgagee may take, receive, reserve and charge on the Secured Indebtedness shall be determined in accordance with the laws of the State of Florida. In no event shall the amount of interest (including any prepaid interest or other charges or fees held to be interest by a court of competent jurisdiction) accrue to be payable under the Note exceed the highest contract rate of interest allowed by applicable law for the time such indebtedness shall be outstanding and unpaid, and if by reason of the acceleration of maturity of the Secured Indebtedness, or for any other reason, interest in excess of such highest legal rate shall be due and paid, any such excess shall constitute and be treated as a payment on the principal evidenced by the Note and shall operate to reduce such principal by the amount of such excess, or if in excess of the

principal indebtedness, such excess shall be refunded to the undersigned. If is the express intent hereof that the undersigned not pay and Holder of the Note not receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be legally paid by the Mortgagor under applicable law.

4.04  Hazardous or Toxic Materials.  Mortgagor expressly represents to Mortgagee that to the best of its knowledge the Mortgaged Property has not in the past been used, is not presently being used, and will not in the future be used for the handling, storage, transportation, or disposal of hazardous or toxic materials except as permitted by law and approved in advance by Mortgagee and that no spillage or leakage of such substances has occurred on the Mortgaged Property. Mortgagor agrees to indemnify, defend and hold Mortgagee harmless from and against any loss, liability, or damages to Mortgagee, including without limitation attorneys' fees, incurred by Mortgagee as a result of such past, present or future use, handling, storage, transportation, disposal, spillage or leakage of hazardous or toxic materials.

Mortgagee, at Mortgagee's sole option at any time that Loan proceeds remain outstanding, may obtain, at Mortgagor's expense, a satisfactory report from a reputable environmental consultant of Mortgagee's choice as to whether the Mortgaged Property has been or presently is being used for the handling, storage, transportation, or disposal of hazardous or toxic materials and that no spillage or leakage of such materials has occurred on the Mortgaged Property.

In the event Mortgagee requests such a report and said report indicates such past or present use, handling, storage, transportation, disposal, spillage or leakage, Mortgagee may. require that all violations of law with respect to hazardous or toxic materials be corrected and/or that Mortgagor obtain all necessary environmental permits within thirty (30) days of Mortgagee's notice to Mortgagor or Mortgagor's discovery of a violation(s), whichever occurs sooner, provided, however, if such violation(s) cannot be corrected or such permit obtained within such thirty (30) day period, and provided Mortgagor commences the necessary corrective action within such thirty (30) day period and diligently pursues compliance or work necessary to obtain necessary permits, Mortgagor shall have a reasonable time, not to exceed ninety (90) days, to correct such condition or to obtain required permits within such time periods shall constitute a default hereunder entitling Mortgagee to the remedies provided herein.

4.05  Release.  AS A MATERIAL INDUCEMENT FOR MORTGAGEE TO EXECUTE THIS AGREEMENT, MORTGAGOR DOES HEREBY RELEASE, WAIVE, DISCHARGE, COVENANT NOT TO SUE, ACQUIT, SATISFY AND FOREVER DISCHARGE MORTGAGEE ITS OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS AND ITS AFFILIATES AND ASSIGNS FROM ANY AND ALL LIABILITY, CLAIMS, COUNTERCLAIMS, DEFENSES, ACTIONS, CAUSES OF ACTION, SUITS, CONTROVERSIES, AGREEMENTS, PROMISES AND DEMANDS WHATSOEVER IN LAW OR IN EQUITY WHICH MORTGAGOR EVER HAD, NOW HAS, OR WHICH ANY PERSONAL REPRESENTATIVE, SUCCESSOR, HEIR OR ASSIGN OF MORTGAGOR HEREAFTER CAN, SHALL OR MAY HAVE AGAINST MORTGAGEE, ITS OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS, AND ITS AFFILIATES AND ASSIGNS, FOR, UPON OR BY REASON OF ANY MATTER, CAUSE OR THING WHATSOEVER THROUGH THE DATE THAT THIS AGREEMENT IS EXECUTED. MORTGAGOR FURTHER EXPRESSLY AGREES THAT THIS RELEASE AND WAIVER IS INTENDED TO BE AS BROAD AND INCLUSIVE AS PERMITTED BY THE LAWS OF THE STATE OF FLORIDA.

4.06    Waiver of Jury Trial.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF MORTGAGOR BY EXECUTION HEREOF AND MORTGAGEE BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT TO MORTGAGEE TO ACCEPT THIS AGREEMENT.  EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED; SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS AGREEMENT.

4.07    Waiver of Bankruptcy Stay.  MORTGAGOR HEREBY AGREES, IN CONSIDERATION OF THE RECITALS AND MUTUAL COVENANTS CONTAINED HEREIN, AND FOR OTHER GOOD AND VALUABLE CONSIDERATION, INCLUDING THE FORBEARANCE OF MORTGAGEE FROM GOING TO TRIAL AND EXERCISING THEIR OTHER RIGHTS AND REMEDIES OTHERWISE AVAILABLE TO IT, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, THAT IN THE EVENT THAT MORTGAGOR SHALL FILE WITH ANY BANKRUPTCY COURT OF COMPETENT JURISDICTION OR BE THE SUBJECT OF ANY PETITION UNDER TITLE 11 OF THE UNITED STATES CODE THE AUTOMATIC STAY IMPOSED BY SECTION 362 OF TITLE 11 OF THE UNITED STATES CODE IS WAIVED, AND SUCH WAIVER CONSTITUTES "CAUSE" PURSUANT TO 11 U.S.C. SECTION 362(d)(1) FOR THE IMMEDIATE LIFTING OF THE AUTOMATIC STAY IN FAVOR OF MORTGAGEE , AND MORTGAGOR HEREBY KNOWINGLY AND IRREVOCABLY WAIVES ALL DEFENSES AND OBJECTIONS TO SUCH LIFTING OF THE AUTOMATIC STAY.

4.08    Partial Release Provisions.  Mortgagor shall be entitled to partial releases of the lien of the Mortgage upon payment to Mortgagee as follows:

An amount equal to (i) One Hundred Percent (100.00%) of the net sales proceeds of a unit sold to a bona fide purchaser for value, plus all accrued interest charges, costs and expenses of any nature owed in connection with such unit.

Each release of a Unit shall be subject to the following terms and conditions and any other provisions by Mortgagee:

(a)    Each release shall be requested at least three (3) days prior to the release date, by written notice to Mortgagee;

(b)    Mortgagor shall, at the time of each partial release, be in compliance with all provisions of this Mortgage and the Loan Documents;

Case 9:10-cv-80120-JIC Document 1-1 Entered on FLSD Docket 01/26/2010 Page 30 of 50

(c) At the time of and after giving effect to the release requested by Mortgagor, there shall be no event of default or any event which, with notice or lapse of time or both, would constitute an event of default by Mortgagor under the Loan Documents; and

(d) All required documentation shall be prepared by counsel for Mortgagor at the expense of Mortgagor and shall be approved by counsel for Mortgagee, at the expense of Mortgagor.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be signed and sealed the day and year first above written.

WITNESSES:

MORTGAGOR:

610 CLEMATIS RETAIL PROPERTIES, LLC, a Florida limited liability company

By: _____

Ilia Mogilevsky
Its: Manager

Witness #1
_Scott Wortman_
(Type or Print Name)

{CORPORATE SEAL}

Witness #2
(Type or Print Name)

STATE OF FLORIDA
COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this 17th day of December, 2007 by Ilia Mogilevsky, as Manager of 610 CLEMATIS RETAIL PROPERTIES, LLC, a Florida limited liability company. He/She is personally known to me or has produced _____ (type of identification) as identification and did (did not) take an oath. NOTE: If a type of identification is not inserted in the blank provided, then the person executing this instrument was personally known to me. If the words in the parenthetical "did not" are not circled, then the person executing this instrument did take an oath.

{SEAL}

_____
Signature

Case 9:10-cv-80120-JIC   Document 1-1   Entered on FLSD Docket 01/26/2010   Page 31 of 50

## EXHIBIT "A"

Units CU-2, CU-3, CU-4, and CU-5, of 610 CLEMATIS, a Condominium, according to the Declaration thereof, as recorded in Official Records Book 19653, Page 0383, of the Public Records of Palm Beach County, Florida, together with an undivided share in the common elements appurtenant thereto.

SCANNED

JAN 2 4 2007

Hillcrest Bank FL

### HILLCREST BANK FLORIDA
### UNCONDITIONAL AND CONTINUING GUARANTY

THIS GUARANTY, made as of the 17th day of December, 2007, by the undersigned, hereinafter referred to as the "Guarantor", to and for the benefit of *HILLCREST BANK FLORIDA, a Florida banking corporation*, at Naples, Florida, hereinafter referred to as "the Bank".

### WITNESSETH:

WHEREAS, Bank is the holder of that certain Promissory Note of even date in the original principal amount of *TWO MILLION TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($2,200,000.00)* given by *610 CLEMATIS RETAIL PROPERTIES, LLC, a Florida limited liability company* ("Borrower"), to Bank (the "Note"), as secured by that certain Mortgage and Security Agreement of even date given by Borrower to Bank; and

WHEREAS, Guarantor desires to acknowledge and confirm its obligations regarding the indebtedness set forth in the Loan Documents (as defined below).

NOW, THEREFORE, in consideration of the premises and for the purpose of inducing Bank to make the aforementioned Loan to Borrower, Guarantor hereby agrees as follows:

1.     Guarantor jointly and severally with any other guarantors, unconditionally and absolutely guarantees the due and punctual payment of the principal of the Note, the interest thereon and any other monies due or which may become due to Bank thereon or under any other loan documents executed by Borrower in favor of Bank in connection with the indebtedness described above (collectively, as amended, modified, renewed or restated from time, the "Loan Documents"), and the due and punctual performance and observance by Borrower of all the other terms, covenants and conditions of the Note, Mortgage and other Loan Documents, whether according to the present terms thereof, at an earlier or accelerated date or dates as provided therein, or pursuant to any extension of title or to any change or changes in the terms, covenants and conditions thereof now or at any time hereinafter made or granted, together with any and all indebtedness of Borrower under this loan transaction (all such indebtedness, obligation and liabilities sometimes referred to herein as the "Indebtedness"). The term "Obligations" as used herein shall mean all obligations of Borrower under the Loan Documents.

2.     Guarantor represents and warrants to Bank that (a) this Guaranty has been duly executed and delivered by Guarantor and constitutes a legal, valid and binding obligation of Guarantor, enforceable against it in accordance with its terms; (b) the execution, delivery and performance of this Guaranty do not (i) violate any requirement of law, (ii) contravene any material contractual obligation, or (iii) result in the creation or imposition of any lien upon any property, asset or revenue of Guarantor; (c) no consent, approval, order or authorization of, or registration, declaration or filing with, any governmental authority or other person is required in connection with the execution, delivery and performance of this Guaranty, except such consents, approvals, orders, authorizations, registrations, declarations and filings that are so required and which have been obtained and are in full force and effect; (d) Guarantor

EXHIBIT
"C"

Case 9:10-cv-80120-JIC  Document 1-1  Entered on FLSD Docket 01/26/2010  Page 33 of 50

has paid all taxes and other charges imposed by any governmental authority due and payable by Guarantor other than those which are being challenged in good faith by appropriate proceedings and for which adequate reserves have been established; (e) Guarantor is not in violation of any requirement of law or contractual obligation other than those the consequences of which could not have a material adverse effect on Guarantor's ability to pay and perform under this Guaranty; (f) no litigation, investigation or proceeding of any governmental authority is pending or, to the knowledge of Guarantor, threatened against Guarantor which, if adversely determined, could have a material adverse effect on Guarantor's ability to pay and perform under this Guaranty; (g) any financial statements of Guarantor delivered to Bank present fairly the financial condition of Guarantor as of the date thereof and since the date thereof there has been no material adverse change in the financial condition, business affairs or prospects of the Guarantor; (h) the transactions contemplated by this Guaranty are being consummated by Guarantor in furtherance of Guarantor's ordinary business purposes, with no contemplation of insolvency and with no intent to hinder, delay or defraud any of its present or future creditors; (i) neither before nor as a result of the transactions contemplated by this Guaranty will Guarantor be insolvent or have an unreasonably small capital for the conduct of its business and the payment of its anticipated obligations; and (j) Guarantor's assets and cash flow enable it to meet its present obligations in the ordinary course of business as they become due, and Guarantor does not believe that it will incur debts beyond its ability to pay.

3.  Guarantor hereby agrees (a) to deliver to Bank (i) notice of any default under the Loan Documents or any event or circumstance not yet constituting an default under the Loan Document but which, with the giving of notice or lapse of time or both, would become a default under the Loan Documents (a "Default") or of any other event or condition which could have a material adverse effect on Guarantor's ability to honor this Guaranty, and (ii) such other information regarding the business, operations or financial or other condition of Guarantor as required by the Loan Documents or as Bank may reasonably request; (b) to the extent failure to do so could have a material adverse effect on Guarantor's ability to honor this Guaranty, to pay all taxes and other charges imposed by any governmental authority upon Guarantor or its property as and when they become due; (c) to the extent failure to do so could have a material adverse effect on Guarantor's ability to honor this Guaranty, to comply with all requirements of law and contractual obligations; and (d) to deliver to Bank within thirty (30) days of filing same, until payment in full of all Obligations has been made under the terms and conditions of the Loan Documents, a true, correct and complete copy of Guarantor's federal income tax return for the most recent year, together with the financial statements of Guarantor as of the last day of the preceding calendar year (and for the twelve-month period then ended).

4.  Guarantor authorizes Bank, in its discretion, without notice to Guarantor, irrespective of any change in the financial condition of Borrower, Guarantor or any other guarantor of the Obligations since the date hereof, and without affecting or impairing in any way the liability of Guarantor hereunder, from time to time to (a) create new Obligations and, either before or after receipt of notice of revocation, renew, compromise, extend, accelerate or otherwise change the time for payment or performance of, or otherwise change, amend or waive the terms of the Obligations or any part thereof, including, without limitation, increase or decrease of the rate of

Case 9:10-cv-80120-JIC   Document 1-1    Entered on FLSD Docket 01/26/2010   Page 34 of 50

interest thereon; (b) take and hold security for the payment or performance of the Obligations and exchange, enforce, compromise, surrender; waive or release any such security; (c) apply such security and direct the order or manner of sale thereof; (d) purchase such security at a public or private sale; (e) otherwise exercise any right or remedy it may have against Borrower, Guarantor, any other guarantor of the Obligations or any security, including, without limitation, the right to foreclose upon any such security by judicial or nonjudicial sale; (f) settle, compromise with, release or substitute any one or more makers, endorsers or guarantors of the obligations; (g) assign the Obligations, this Guaranty, or the other Loan Documents in whole or in part; and (h) grant Borrower indulgences generally. Guarantor hereby agrees that none of the foregoing acts constitutes a material alteration of Guarantor's liability hereunder and specifically waives any such defense to liability otherwise arising by reason of any such act.

5.      Guarantor waives (a) any right to require Bank to (i) proceed against Borrower or any other guarantor of the Obligations, (ii) proceed against or exhaust any security received from Borrower or any other guarantor of the Obligations, or (iii) pursue any other remedy whatsoever; (b) any defense arising by reason of the application by Borrower of the proceeds of any borrowing; (c) any defense resulting from the absence, impairment or loss of any right of reimbursement, subrogation, contribution or other right or remedy of Guarantor against Borrower, any other guarantor of the obligations or any security, whether resulting from an election by Bank to foreclose upon security by nonjudicial sale, or otherwise; (d) any setoff or counterclaim of Borrower or any defense which results from any disability or other defense of Borrower or the cessation or stay of enforcement from any cause whatsoever of the liability of Borrower (including, without limitation, the lack of validity or enforceability of any Loan Document); (e) any right to exoneration of sureties which would otherwise be applicable; (f) any right of subrogation or reimbursement and, if there are any other guarantors of the obligations, any right of contribution, and right to enforce any remedy which Bank now has or may hereafter have against Borrower, and any benefit of, and any right to participate in, any security now or hereafter received by Bank; (g) all presentments, diligence, demands for performance, notices of non-performance, notices delivered under the Loan Agreement or any Loan Document, protests, notice of dishonor, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional obligations and notices of any public or private foreclosure sale; (h) the benefit of any statute of limitations to the extent permitted by law; (i) any appraisement, valuation, stay, extension, moratorium, redemption, or similar law or similar rights for marshalling; (j) any right to be informed by Bank of the financial condition of Borrower or any other guarantor of the Obligations or any change therein or any other circumstances bearing upon the risk of nonpayment or nonperformance of the Obligations; and (k) the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty. Guarantor has the ability and assumes the responsibility for keeping informed of the financial condition of Borrower and any other guarantors of the Obligations and of other circumstances affecting such nonpayment and nonperformance risks. Without limiting the generality of any of the foregoing, Guarantor hereby waives any right to be reimbursed by Borrower or any other guarantor of the Obligations for any payment of the Obligations made directly or indirectly by Guarantor or from any property of Guarantor, whether arising by way of any statutory, contractual or other right of

subrogation, contribution, indemnification or otherwise.

The obligations of the Guarantor hereunder shall not be released, diminished, impaired, reduced, dependent upon or affected by any one or more of the following: (i) the genuineness, validity, regularity or enforceability of, or the existence of any default with respect to, the Obligations, any security thereof, or any related instrument, documents, obligation, transaction or matter; (ii) the, nature, extent, condition, value or continued existence of any security given in connection with the Obligations; (iii) any action or failure to take action by any holder of the Obligations under or with respect to this Guaranty or the obligations, any security thereof, or any related documents, transaction or matter; (iv) any other dealings between any holder of the obligations and Bank; (v) any exculpatory language or provisions limiting or restricting Bank's rights or remedies against Borrower under the Loan Documents; or (vi) any claim by or on behalf of Borrower of any credit or right of setoff with respect to the Note or any of the Obligations. This Guaranty is irrevocable and the Obligations of the Guarantor hereunder shall terminate and cease only at the time Bank receives payment in full of all of the Obligations or the Guarantor pays the Obligations to the full and maximum extent of its liability hereunder.

The Guarantor agrees that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time, payment of the Obligations or any part thereof is rescinded or must otherwise be restored by Bank upon or as a result of the bankruptcy or reorganization of Borrower or otherwise. If after receipt of any payment of, or the proceeds of any collateral for, all or any part of the Obligations, Bank is compelled to surrender or voluntarily surrenders such payment or proceeds to any person because such payment or application of proceeds is or may be avoided, invalidated, recaptured or set aside as a preference, fraudulent conveyance, impermissible setoff, or for any other reason, whether or not such surrender is the result of (i) any judgment, decree or order of any court or administrative body having jurisdiction over Bank; or (ii) any settlement or compromise by Bank of any claim as to any of the foregoing, with any person (including Borrower), then the Obligations or affected part thereof shall be reinstated and continue and this Guaranty shall be reinstated and continue in full force as to such Obligations or part thereof as if such payment or proceeds had not been received, notwithstanding any previous cancellation of any instrument delivered to evidence the satisfaction thereof. The provisions hereof shall survive the termination of this Guaranty and any satisfaction and discharge by the Borrower, by virtue of any payment, court order, or any federal or state law.

6.      Guarantor hereby subordinates any and all indebtedness of Borrower to Guarantor to the prior indefeasible payment and performance of all Obligations. Guarantor agrees that Bank shall be entitled to receive payment of all Obligations before Guarantor receives payment of any indebtedness of Borrower to Guarantor. Any payments on such indebtedness of Borrower to Guarantor, if Bank so requests, shall be collected, enforced and received by Guarantor as trustee for Bank and be paid over to Bank on account of the Obligations, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty. Bank is authorized and empowered irrevocably (but without any obligation to so do), in its discretion, as attorney-in-fact (with such power being coupled with an interest and

being irrevocable) for Guarantor or otherwise (a) in the name of Guarantor, to collect and enforce, and to submit claims in respect of, indebtedness of Borrower to Guarantor and to apply any amounts received thereon to the Obligations, and (b) to require Guarantor (i) to collect and enforce, and to submit claims in respect of, indebtedness of Borrower to Guarantor, and (ii) to pay any amounts received on such indebtedness to Bank for application to the Obligations. Guarantor hereby assigns to Bank all of Guarantor's rights to any payments to which Guarantor would be entitled under this Guaranty.

7.    In addition to all liens upon and rights of setoff against the property of Guarantor given to Bank by law or separate agreement to secure the liabilities of Guarantor hereunder, to the extent permitted by law, Guarantor hereby grants to Bank a security interest in all monies, deposit accounts, securities and other property, real or personal, of Guarantor now or hereafter in the possession of or on deposit with Bank or its affiliate, whether held in a general or special account or deposit, or for safekeeping or otherwise.

In addition to any rights and remedies of Bank provided by law, Bank shall have the right, without prior notice to Guarantor, any such notice being expressly waived by Guarantor to the extent permitted by applicable law, upon the occurrence and during the continuance of a Default, to set-off and apply against the Obligations, whether matured or unmatured, any amount owing from Bank or its affiliates to Guarantor, including all deposits, accounts and moneys of Guarantor then or thereafter maintained with Bank, at or at any time after, the happening of any of the above mentioned events.

No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Bank or by any failure to exercise such right of setoff or to enforce such security interest, or by any delay in so doing; and every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Bank.

8.    Guarantor agrees that it shall have no right to subrogation whatsoever with respect to the aforementioned indebtedness or to any monies due and unpaid thereon or any collateral securing the same, unless and until the Bank shall have received payment in full of all sums at any time evidenced or secured by the Mortgage and other Loan Documents.

9.    Guarantor agrees that this Guaranty is an absolute, continuing and unlimited guaranty of payment and performance hereinabove specified without regard to the regularity, validity or enforceability of any liability or obligation of Borrower hereby guaranteed.

10.    Guarantor agrees that this Guaranty may be enforced by the Bank without first resorting to or exhausting any other security or collateral or without first having recourse to the Note or other Loan Documents or any of the property covered by the Mortgage or other collateral through foreclosure proceedings or otherwise; provided, however, that

nothing herein contained shall prevent Bank for suing on the Note or other Loan Documents or foreclosing or exercising its power of sale under the Mortgage or from exercising any other rights thereunder, and if such foreclosure or sale or other remedy is availed of, only the net proceeds therefrom, after deduction of all charges and expenses (including reasonable attorneys' fees) of every kind and nature whatsoever, shall be applied in reduction of the amount due on the Note, Mortgage and other Loan Documents and the Bank shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment hereunder or enforcement hereof. At any sale of the security or collateral for the indebtedness or any part thereof, whether by foreclosure, exercise of power of sale or otherwise, Bank may, at its discretion purchase all or any part of such collateral so sold or offered for sale for its own account and may apply against the amount bid therefor the balance due it pursuant to the terms of the Note, Mortgage or other Loan Documents.

11.    Guarantor agrees that this Guaranty is irrevocable and the obligations of Guarantor hereunder shall terminate and cease only at the time Bank receives payment in full of all of the Indebtedness or Guarantor pays the Indebtedness in full.

12.    Guarantor agrees that in the event it shall become necessary for Bank to employ an attorney for the purposes of enforcing the terms of this Guaranty, Guarantor agrees to pay any reasonable attorneys' fees, together with court costs and any other expenses of collection that might be incurred hereunder, irrespective of whether or not suit be brought hereunder.

13.    Guarantor agrees that this Guaranty shall inure to the benefit of and may be enforced by Bank, and any subsequent holder or holders of the Note, Mortgage, other Loan Documents and other collateral and shall be binding upon and enforceable against the Guarantor and Guarantor's legal representatives or successors and assigns.

14.    AS PART OF THE CONSIDERATION FOR THE LOAN BEING MADE TO BORROWER, GUARANTOR HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF FLORIDA OR THE STATE WHERE THE PREMISES ARE LOCATED AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO GUARANTOR AT THE ADDRESS STATED IN THIS AGREEMENT AND/OR THE LOAN AGREEMENT, AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT THEREOF. GUARANTOR WAIVES ANY OBJECTION TO JURISDICTION AND VENUE OF ANY ACTION INSTITUTED AGAINST IT AS PROVIDED HEREIN AND AGREES NOT TO ASSERT ANY DEFENSE BASED ON LACK OF JURISDICTION OR VENUE. GUARANTOR FURTHER AGREES NOT TO ASSERT AGAINST BANK (EXCEPT BY WAY OF A DEFENSE OR COUNTERCLAIM IN A PROCEEDING INITIATED BY BANK) ANY CLAIM OR OTHER ASSERTION OF LIABILITY WITH RESPECT TO THE LOAN DOCUMENTS, BANK'S CONDUCT OR OTHERWISE IN ANY JURISDICTIONS OTHER THE FOREGOING JURISDICTIONS.

15.    All notices, requests, demands, consents, instructions or other communications to or upon Bank or Guarantor under this Guaranty shall be in writing and mailed or delivered to each party at it address as set forth in the Loan Agreement, in compliance with the requirements for notice set forth therein.

16.     Guarantor acknowledges that Bank may assign the Note and other Loan Documents, in whole or in part and by participation, to another holder; and, Guarantor specifically agrees that, in such event, each such holder (whether Bank or another) shall have the right to enforce this Guaranty.  Guarantor specifically consents that any action brought under this Guaranty against it may be brought and commenced in the State of Florida in any court of competent jurisdiction and venue therein and consents to the service of process issued from said court.

If there are limits under the laws of the State of Florida concerning amounts (whether interest, principal or other amounts) for which guarantors of the debts of another may be liable, then, in no event shall Guarantor be charged or assessed, nor shall he pay, any such amounts as defined by laws of Florida which would cause the total of such amounts for which he is liable hereunder to exceed the highest permissible or rate allowed by the laws of Florida, and any provision herein requiring payment in excess of such conventional rate is null and void as to such excess.

WITNESS THE EXECUTION hereof as of the 17th day of December, 2007.

_____
ILIA MOGILEVSKY

STATE OF FLORIDA
COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this 17th day of December, 2007, by ILIA MOGILEVSKY, who is personally known to me or who has produced _____ (type of identification) as identification and who did (did not) take an oath.  NOTE:  If a type of identification is not inserted in the blank provided, then the person(s) executing this instrument was personally known to me.  If the words in the parenthetical "did not" are not circled, then the person(s) executing this instrument did take an oath.

(SEAL)

_____
Signature

_____
(Type or print Name of Acknowledger)

Nov 02 07 09:36a 

 p.1

SCANNED

JAN 2 4 2007

Hillcrest Bank FL

To: _____ (the Bank)   Office   _____

**Please read the following directions before completing this Personal Financial Statement.**

1. Complete all sections, except Section 2, if you are applying for individual credit in your own name and are relying solely on your own income or assets for repayment or if this personal financial statement relates to your guaranty of the indebtedness of other person(s), firm(s), corporation(s).

2. Complete Section 2 if any of the following apply:

   - You are applying for joint credit with another person, provide information about the joint applicant.

   - You are relying on income from alimony, child support, or separate maintenance or on the income or assets of another person as a basis for repayment of the credit requested, provide information about the person on whose alimony, support or maintenance payments or income or assets you are relying.

   - This is a joint guaranty of the indebtedness of other person(s), firm(s), corporation(s), provide information about the joint guarantor.

| Section 1 - Individual/Applicant Information (Please Print) | | | Section 2 - Other Party/Co-Applicant Information (Please Print) | | |
|---|---|---|---|---|---|
| Name | | | Name | | |
| Ilia Mogilevsky | | | | | |
| Residence Address | | | Residence Address | | |
| 111 Rumford Way | | | | | |
| City | State | Zip | City | State | Zip |
| Manalapan | NJ | 07726 | | | |
| Position or Occupation | | | Position or Occupation | | |
| President | | | | | |
| Business Name | | | Business Name | | |
| | | | | | |
| Business Address | | | Business Address | | |
| 9 Curtis Court | | | | | |
| City | State | Zip | City | State | Zip |
| Manalapan | NJ | 07726 | | | |
| Years with Business | | | Years with Business | | |
| 10 Years | | | | | |
| Res. Phone | Bus. Phone | | Res. Phone | Bus. Phone | |
| (732) 322-9944 | (732) 513-7401 | | | | |

640754 (Rev 2.0)

**CONFIDENTIAL**

Page 1



Nov 02 07 09:36a   p.2

Statement of Financial Condition as of

### Section 3 – Balance Sheet (attach additional schedules as needed)

| Assets | Dollars | Jt* | Liabilities | Dollars | Jt* |
|---|---|---|---|---|---|
| Cash and Short-term Investments (Schedule A) | 999,000.00 | ☐ | Outstanding Credit Card Balances | 15,000.00 | ☐ |
| Stocks & Bonds (readily marketable) (Schedule B) | 583,642.00 | ☐ | Taxes Payable | 40,000.00 | ☐ |
| Unlisted Securities (Schedule C) | | ☐ | Policy Loan (life insurance) (Schedule D) | | ☐ |
| Notes Receivable & Accounts Receivable | | ☐ | Mortgages & Obligations Due (Schedules F & G) | 253,904.00 | ☐ |
| Cash Surrender Value-Life Insurance (Schedule D) | | ☐ | Notes & Accounts Payable (Schedule H) | | ☐ |
| General/Ltd Partnership Interests (Schedule E) | | ☐ | Other Liabilities (list): | | ☐ |
| Retirement Accounts | | ☐ | 610 Clematis Retail Properties, LLC – Wachovia Loan | 1,300,000.00 | ☐ |
| Personal Property | 75,000.00 | ☐ | | | ☐ |
| Automobiles | 90,000.00 | ☐ | | | ☐ |
| Real Estate-Personal Residences (Schedule F) | 1,400,000.00 | ☐ | | | ☐ |
| Real Estate-Investments (Schedule G) | 2,700,000.00 | ☐ | | | ☐ |
| Real Estate Investments (Direct & Partnership Interests) (Schedule I)** | 3,200,000.00 | ☐ | | | ☐ |
| Other Assets (list): | | ☐ | | | ☐ |
| | | ☐ | | | ☐ |
| | | ☐ | | | ☐ |
| | | ☐ | | | ☐ |
| ASSETS | 8,957,642.00 | | TOTAL LIABILITIES | 1,608,904.00 | |
| | | | NET WORTH (total assets minus total liabilities) | 7,348,738.00 | |

### Section 4 – Income statement

| Annual Income | Applicant | Co-Applicant | Annual Expenses | Applicant | Co-Applicant |
|---|---|---|---|---|---|
| Salary | 220,000.00 | | Home Mortgage (Principal & Interest) | 24,000.00 | |
| Bonus and Commissions | | | Loan Payments (including other R/E) | 30,672.00 | |
| Interest and Dividends | | | Income Tax (State & Federal) | 84,232.00 | |
| Alimony, Separate Maintenance, Child Support *** | | | Planned or Required Investments/ Partnership Contributions | | |
| Capital Gains | | | General Living Expenses | 55,000.00 | |
| Real Estate Income | 230,000.00 | | Other Expenses (list): | | |
| Other Income (list): | | | 610 Clematis Retail – Lender | 60,000.00 | |
| 1031 Exchange | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| GROSS INCOME | 450,000.00 | 0.00 | TOTAL EXPENSES | 253,904.00 | 0.00 |

### Section 5 – Contingent Liabilities (include brief description)

| | Applicant | Co-Applicant |
|---|---|---|
| As endorser or guarantor on notes/leases/contracts: | | |
| On letters of credit | | |
| Current or pending suits or other litigation: | | |
| Other (list): | | |
| TOTAL | 0.00 | 0.00 |

* Please check pd if jointy held.
** Schedule I should be used by individuals with extensive real estate investments where additional data may be needed or required by the Bank to properly evaluate the borrower's financial condition. It can be used instead of Schedule G. Because it will not be completed by most borrowers or guarantors, it is a separate schedule not printed on the Personal Financial Statement. If it is appropriate for you and has not been provided, please request it from the Bank.

Nov 02,07 09:37a                                                                    p.3

Statement of Financial Condition as of _____, 20_____

** Alimony, separate maintenance, and/or child support income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

Nov 02 07 09:37a                                                                                    p.4

### Schedule A: Cash & Short term Investments (certificates of deposit, commercial paper, money market funds, etc.)

| Name of Institution | Savings Accts ($ amount) | Checking Accts ($ amount) | Other Short-term Investments Type and $ amount | Total | Pledged? (Y/N) | Owner(s) Code* |
|---|---|---|---|---|---|---|
| Wachovia Bank | 50,000.00 | | | | ☐ | |
| ING Direct | 59,000 | | | | ☐ | |
| Chase Bank | 800,000 | | | | ☐ | |
| | | | | | ☐ | |
| | | | | | ☐ | |
| | | | | | ☐ | |
| | | | | Total | 0.00 | |

### Schedule B: Stocks and Bonds (including U.S. Government and Marketable Securities)

| Number of Shares or Face value | Description | Market Value | Margin? (Y/N) | Restricted? (Y/N) | Pledged? (Y/N) | Owner(s) Code* |
|---|---|---|---|---|---|---|
| 11,669 | JP Morgan Emerging Markets Equity | 320,000.00 | ☐ | ☐ | ☐ | |
| 3,500 | Level 3 Communications Inc. | 11,000.00 | ☐ | ☐ | ☐ | |
| 1,000 | China Shenghuo Pharmaceuticals Hldgs. | 10,000.00 | ☐ | ☐ | ☐ | |
| 20,000 | Axesstel Inc. | 19,000.00 | ☐ | ☐ | ☐ | |
| 7,648 | Franklin Templeton FD A. | 110,642.00 | ☐ | ☐ | ☐ | |
| 7,062 | Evergreen Asset Allocation | 113,000.00 | ☐ | ☐ | ☐ | |
| | Total: | 583,642.00 | | | | |

### Schedule C: Unlisted Securities

| Number of Shares | Description | Source of Value | Values | % of Company Owned | Pledged? (Y/N) | Owner(s) (Y/N) |
|---|---|---|---|---|---|---|
| N/A | | | | | ☐ | ☐ |
| N/A | | | | | ☐ | ☐ |
| N/A | | | | | ☐ | ☐ |
| | | Total: | 0.00 | | | |

### Schedule D: Life Insurance Carried (include individual and group insurance)

| Name of Insurance Company | Owner of Policy | Beneficiary | Face Value | Policy Loans | Cash Surrender | Assigned? (Y/N) |
|---|---|---|---|---|---|---|
| N/A | | | | | | ☐ |
| N/A | | | | | | ☐ |
| N/A | | | | | | ☐ |
| | | Total: | 0.00 | | | |

### Schedule E: General and/or Limited Partnership Interests (Please attach K-1)

| Name of Partnership | Type of Investment | (L)imited (G)eneral | Amount Invested | Fair Market Value of Interest | Annual Contribution Required | Pledged? (Y/N) | Owner(s) (Y/N) |
|---|---|---|---|---|---|---|---|
| 610 Clematis Retail Properties LLC | Commercial Real Estate | L = Limited | 900,000.00 | 3,200,000.00 | | ☐ | ☐ |
| | | L = Limited | | | | ☐ | ☐ |
| | | L = Limited | | | | ☐ | ☐ |
| | | Total: | 900,000.00 | 3,200,000.00 | | | |

Owner(s) Code:    A=Applicant          AC=Joint Account of Applicant and Co-Applicant          JC=Joint Account of Co-Applicant and another party
                  C=Co-applicant       JA=Joint Account of Applicant and another party

### Schedule F: Real Estate (personal residences)

Case 9:10-cv-80120-JIC   Document 1-1   Entered on FLSD Docket 01/26/2010   Page 43 of 50

Nov 02 07 09:37a                                                                                      p.5

Statement of Financial Condition as of _____, 20____

| Description/Address of Property | Mortgage Holder | Maturity Date | Title in Name of | Purchase Date | Cost | Present Loan Balance | Monthly Payt. | Market Value |
|---|---|---|---|---|---|---|---|---|
| 111 Rumford Way Manalapan, NJ 07726 | Bank of America Line of Credit | 12/1/202 2 | Ilia Mogilevsky | 12/10/20 01 | 195,000.0 0 | 68,326.00 | 161 | 400,000.00 |
| 12 Martinique Cove West Palm Beach, FL 33412 | No Mortgage | | Ilia Mogilevsky | 6/10/200 7 | 850,000.0 0 | | | 1,000,000.00 |
| | | | | Total: | 1,045,000. 00 | 68,326.00 | | 1,400,000.00 |

### Schedule G:  Real Estate Investments

| Description/Address of Property | Mortgage Holder | Maturity Date | % Owned | Title in Name of | Purchase Date | Cost | Present Loan Balance | Market Value | Total Annual Rental Income | Monthly Loan Payt. | Other Expenses |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9590 Osprey Isles B West Palm Beach | VW Bank | 5/1/2036 | 100 | Ilia Mogilevsky | 10/1/20 02 | 349,00 0.00 | 452,565. 00 | 700,00 0.00 | 48,000 .00 | 587.00 | 0.00 |
| 46G Stonehurst Blvd Freehold, NJ 07728 | Greenpoint Mortgage | 8/1/2016 | 100. | Ilia Mogilevsky | 8/1/200 1 | 69,000 .00 | 52,185.0 0 | 300,00 0.00 | 15,000 .00 | 666.00 | 0.00 |
| 773 Cresta Circle West Palm Beach, FL 33401 | — | — | 100 | Ilia Mogilevsky | 3/4/200 5 | 405,00 0.00 | 0.00 | 600,00 0.00 | 27,600 .00 | 0.00 | 3,000.0 0 |
| 21535 Baccarat LN Unit 203 Estero, FL 339928 | — | — | 100 | Ilia Mogilevsky | 6/9/200 6 | 440,00 0.00 | 0.00 | 600,00 0.00 | 0.00 | 0.00 | 0 |
| 58B Stonehurst Blvd Freehold, NJ 07728 | — | — | 100 | Ilia Mogilevsky | 5/7/200 2 | 65,000 .00 | 0.00 | 250,00 0.00 | 12,000 .00 | 0.00 | 2,000.0 0 |
| 68C Stonehurst Blvd Freehold, NJ 07728 | — | — | 100 | Ilia Mogilevsky | 5/7/200 2 | 65,000 .00 | 0.00 | 250,00 0.00 | 12,000 .00 | 0.00 | 2,000.0 0 |
| | | | | | Total: | 1,393, 000.00 | 504,750. 00 | 2,700, 000.00 | 114,60 0.00 | 1,253. 00 | 7,000.0 0 |

### Schedule H:  Notes & Accounts Payable (also include credit lines and other commitments even if unused)

| Name of Creditor | Orig. Amt. of Loan | Payment/ Repayment Terms | Maturity Date | Interest Rate | Description of collateral (if any) | Balance Owing | Debtor(s) Code |
|---|---|---|---|---|---|---|---|
| Included in Schedule G | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Total | 0.00 | | | | | 0.00 | |

Debtor Codes:        A=Applicant                 AC=Joint Account of Applicant and Co-Applicant              JC=Joint Account of Co-Applicant and another party
                     C=Co-applicant              JA=Joint Account of Applicant and another party

### Personal Information

| Do you have a will? | | | Dependents | |
|---|---|---|---|---|
| ☐ Yes   ☒ No   If Yes, name of executor | | | Number:   1 | Ages:   1 |

Are you a partner or officer in any venture other than described on schedules?
☒ Yes   ☐ No   If Yes, describe:   610 Clematis Retail Properties LLC

Are any assets pledged other than as described on schedules?
☒ Yes   ☐ No   If Yes, describe:   $900,000

Have you ever declared bankruptcy?
☐ Yes   ☒ No   If Yes, describe:

| Are there any outstanding judgments against you? ☐ Yes   ☒ No | Do you have disability insurance? | Income tax settled through (date) | Alimony, Child Support/Maintenance Expense $ |
|---|---|---|---|

531625 (Rev 2.0)                                    **CONFIDENTIAL**                                     Page 5

Nov 02 07 09:37a                                                                                        p.6

Statement of Financial Condition as of _____, 20____

The information contained in this statement is provided for the purpose of obtaining, or maintaining credit with the Bank on behalf of the undersigned or person, firms or corporations in whose behalf the undersigned may either severally or jointly with others, execute a guaranty in the Bank's favor. Each undersigned understands that the Bank is relying on the information provided herein (including the designation made as to ownership of property) in deciding to grant or continue credit. Each undersigned represents and warrants that the information provided is true and complete and that the Bank may consider this statement as continuing to be true and correct until a written notice of a change is given to the Bank by the undersigned. The Bank is authorized to make all inquiries it deems necessary to verify the accuracy of the statements made herein, and to determine the credit worthiness of the undersigned. The Bank is authorized to answer questions about its credit experience with the undersigned.

| Date Signed | Signature (individual) | Social Security # 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 | Date of Birth 05/30/1977 |
|-------------|------------------------|-------------------------------|--------------------------|
| 11/1/07     |                        |                               |                          |
| Date Signed | Signature (individual) | Social Security #             | Date of Birth            |

531635 (Rev 2.0)                              **CONFIDENTIAL**                                    Page 6

## Report Selection Criteria

**Case ID:** 502009CA001846XXXXMB
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

| | |
|---|---|
| **Case ID:** | 502009CA001846XXXXMB |
| **Case Caption:** | HILLCREST BANK FLORIDA V 610 CLEMATIS RETAIL |
| **Division:** | AW - SASSER |
| **Filing Date:** | Tuesday , January 20th, 2009 |
| **Court:** | CA - CIRCUIT CIVIL |
| **Location:** | MB - MAIN BRANCH |
| **Jury:** | N-Non Jury |
| **Type:** | RF - REAL PROPERTY/FORECLOSURE |
| **Status:** | PE - PENDING |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | ID | Name | | |
|---|---|---|---|---|---|---|---|
| 1 | | | PLAINTIFF | @1670080 | HILLCREST BANK FLORIDA | Aliases: | none |
| 2 | 1 | | ATTORNEY | 0466786 | TELEPMAN , ESQ, JAMES S | Aliases: | none |
| 3 | | | DEFENDANT | @1670081 | 610 CLEMATIS RETAIL PROPERTIES LLC | Aliases: | none |
| 4 | | | DEFENDANT | @1670082 | MOGILEVSKY, ILIA | Aliases: | none |

EXHIBIT
"B"

| 5 |   |   | DEFENDANT | @1670083 | 610 CLEMATIS CONDOMINIUM ASSOCIATION INC | Aliases: | *none* |
| 6 |   |   | DEFENDANT | @1670084 | IM ELECTRIC INC | Aliases: | *none* |
| 7 |   |   | JUDGE | AW | SASSER, JUDGE MEENU | Aliases: | *none* |
| 8 | 3 |   | ATTORNEY | 0152269 | COPPLE , ESQ, RYAN S | Aliases: | *none* |
| 9 | 5 |   | ATTORNEY | 0667358 | HALPERN ESQ, DAVID HARRIS | Aliases: | *none* |

## Docket Entries

| Docket Number | Docket Type | Book and Page No. | Attached To: |
|---|---|---|---|
| | 00000 - ADDITIONAL COMMENTS | | |

| Filing Date: | 20-JAN-2009 |
|---|---|
| Filing Party: | |
| Disposition Amount: | |
| Docket Text: | *none.* |

| | 800FF - CAFF | | |
|---|---|---|---|

| Filing Date: | 20-JAN-2009 |
|---|---|
| Filing Party: | HILLCREST BANK FLORIDA, |
| Disposition Amount: | |
| Docket Text: | *none.* |

| | 0LISP - FEE/LIS PENDENS ($5.60) | | |
|---|---|---|---|

| Filing Date: | 20-JAN-2009 |
|---|---|
| Filing Party: | HILLCREST BANK FLORIDA, |
| Disposition Amount: | |

| Docket Text: | *none.* |
|---|---|

| PE - PENDING | |
|---|---|
| Filing Date: | 20-JAN-2009 |
| Filing Party: | |
| Disposition Amount: | |
| Docket Text: | *none.* |

| RCPT - RECEIPT FOR PAYMENT | |
|---|---|
| Filing Date: | 20-JAN-2009 |
| Filing Party: | HILLCREST BANK FLORIDA, |
| Disposition Amount: | |
| Docket Text: | A Payment of -$346.60 was made on receipt CAMB274392. |

| 1 | CMP - COMPLAINT | |
|---|---|---|
| Filing Date: | 20-JAN-2009 | |
| Filing Party: | HILLCREST BANK FLORIDA, | |
| Disposition Amount: | | |
| Docket Text: | *none.* | |

| 2 | LISP - LIS PENDENS | Book 023044 - Page 00552 |
|---|---|---|
| Filing Date: | 20-JAN-2009 | |
| Filing Party: | HILLCREST BANK FLORIDA, | |
| Disposition Amount: | | |
| Docket Text: | *none.* | |

| 3 | CCS - CIVIL COVER SHEET | |
|---|---|---|
| Filing Date: | 20-JAN-2009 | |
| Filing Party: | HILLCREST BANK FLORIDA, | |
| Disposition Amount: | | |
| Docket Text: | *none.* | |

| 4 | SMIS - SUMMONS ISSUED | |
|---|---|---|
| Filing Date: | 20-JAN-2009 | |
| Filing Party: | 610 CLEMATIS RETAIL PROPERTIES LLC, | |
| Disposition Amount: | | |
| Docket Text: | SM-09-015484 | |

| 5 | SMIS - SUMMONS ISSUED | |
|---|---|---|

| | |
|---|---|
| **Filing Date:** | 20-JAN-2009 |
| **Filing Party:** | 610 CLEMATIS CONDOMINIUM ASSOCIATION INC, |
| **Disposition Amount:** | |
| **Docket Text:** | SM-09-015486 |
| 6 | SMIS - SUMMONS ISSUED |
| **Filing Date:** | 20-JAN-2009 |
| **Filing Party:** | MOGILEVSKY, ILIA |
| **Disposition Amount:** | |
| **Docket Text:** | SM-09-015487 |
| 7 | SMIS - SUMMONS ISSUED |
| **Filing Date:** | 20-JAN-2009 |
| **Filing Party:** | IM ELECTRIC INC, |
| **Disposition Amount:** | |
| **Docket Text:** | SM-09-015488 |
| | SRTN - SERVICE RETURN (ATTACHED) |
| **Filing Date:** | 23-JAN-2009 |
| **Filing Party:** | 610 CLEMATIS RETAIL PROPERTIES LLC, |
| **Disposition Amount:** | |
| **Docket Text:** | SERVED 1/21/09 |
| 8 | LTR - LETTER |
| **Filing Date:** | 09-FEB-2009 |
| **Filing Party:** | IM ELECTRIC INC, |
| **Disposition Amount:** | |
| **Docket Text:** | TO COURT ( PRO SE) |
| | SRTN - SERVICE RETURN (ATTACHED) |
| **Filing Date:** | 10-FEB-2009 |
| **Filing Party:** | 610 CLEMATIS CONDOMINIUM ASSOCIATION INC, |
| **Disposition Amount:** | |
| **Docket Text:** | SERVED 2/2/09 |
| | SRTN - SERVICE RETURN (ATTACHED) |
| **Filing Date:** | 11-FEB-2009 |

Case 9:10-cv-80120-JIC   Document 62-1   Entered on FLSD Docket 02/16/2011   Page 49 of 50
Case 9:10-cv-80120-JIC   Document 1-1   Entered on FLSD Docket 01/26/2010   Page 49 Page 50 of 12
Not an Official Document

| Filing Party: | MOGILEVSKY, ILIA |
|---|---|
| Disposition Amount: | |
| Docket Text: | SERVED FEB 7 09 |

| 9 | MDFT - MOTION FOR DEFAULT |
|---|---|
| Filing Date: | 18-FEB-2009 |
| Filing Party: | HILLCREST BANK FLORIDA, |
| Disposition Amount: | |
| Docket Text: | *none.* |

| 10 | DFT - DEFAULT |
|---|---|
| Filing Date: | 24-FEB-2009 |
| Filing Party: | 610 CLEMATIS RETAIL PROPERTIES LLC, |
| Disposition Amount: | |
| Docket Text: | *none.* |

| | 0CCTP - FEE/CROSS,CNTR CLAIM,3RD PRTY |
|---|---|
| Filing Date: | 25-FEB-2009 |
| Filing Party: | 610 CLEMATIS CONDOMINIUM ASSOCIATION INC, |
| Disposition Amount: | |
| Docket Text: | & OF ILIA MOGILEVSKY |

| | RCPT - RECEIPT FOR PAYMENT |
|---|---|
| Filing Date: | 25-FEB-2009 |
| Filing Party: | 610 CLEMATIS CONDOMINIUM ASSOCIATION INC, |
| Disposition Amount: | |
| Docket Text: | A Payment of -$295.00 was made on receipt CAMB284618. |

| 11 | ANAD - ANSWER & AFFIRMATIVE DEFENSES |
|---|---|
| Filing Date: | 25-FEB-2009 |
| Filing Party: | 610 CLEMATIS RETAIL PROPERTIES LLC, |
| Disposition Amount: | |
| Docket Text: | ILIA MOGILEVSKY; AND COUNTERCLAIM |

| | SRTN - SERVICE RETURN (ATTACHED) |
|---|---|
| Filing Date: | 27-FEB-2009 |
| Filing Party: | IM ELECTRIC INC, |

Case 9:10-cv-80120-JIC   Document 62-1   Entered on FLSD Docket 02/16/2011   Page 50 of 50
Case-9:10-cv-80120-JIC  Document 1-1   Entered on FLSD Docket 01/26/2010   Page 50 of 50
Page 6 of 12

| Disposition Amount: | |
|---|---|
| Docket Text: | SERVED 1/30/09 |

| 12 | ANS - ANSWER | |
|---|---|---|
| Filing Date: | 05-MAR-2009 | |
| Filing Party: | 610 CLEMATIS CONDOMINIUM ASSOCIATION INC, | |
| Disposition Amount: | | |
| Docket Text: | TO COMPLAINT | |

| 13 | REQP - REQUEST TO PRODUCE | |
|---|---|---|
| Filing Date: | 12-MAR-2009 | |
| Filing Party: | HILLCREST BANK FLORIDA, | |
| Disposition Amount: | | |
| Docket Text: | OF DOCUMENTS TO DEFTS 610 CLEMATIS RETAIL PROPERTIES, LLC AND ILIA MOGILEVSKY | |

| 14 | ANAD - ANSWER & AFFIRMATIVE DEFENSES | |
|---|---|---|
| Filing Date: | 12-MAR-2009 | |
| Filing Party: | HILLCREST BANK FLORIDA, | |
| Disposition Amount: | | |
| Docket Text: | TO COUNTERCLAIM | |

| 15 | MDFT - MOTION FOR DEFAULT | |
|---|---|---|
| Filing Date: | 17-MAR-2009 | |
| Filing Party: | HILLCREST BANK FLORIDA, | |
| Disposition Amount: | | |
| Docket Text: | none. | |

| 16 | MSTR - MOTION TO STRIKE | |
|---|---|---|
| Filing Date: | 02-APR-2009 | |
| Filing Party: | 610 CLEMATIS RETAIL PROPERTIES LLC, | |
| Disposition Amount: | | |
| Docket Text: | PLAINTIFFS AFFIRMATIVE DEFENSES | |

| 17 | MOT - MOTION | |
|---|---|---|
| Filing Date: | 13-APR-2009 | |
| Filing Party: | 610 CLEMATIS RETAIL PROPERTIES LLC, | |
| Disposition Amount: | | |
| Docket Text: | FOR ENLARGEMENT | |